## WADE v. TRAVIS COUNTY.

(Circuit Court, W. D. Texas. March 13, 1896.)

No. 2,284.

**1. DISQUALIFICATION OF FEDERAL JUDGE—PECUNIARY INTEREST.**

A district judge who is a resident citizen and taxpayer of a county is not disqualified by pecuniary interest from sitting in a case which involves the validity of bonds issued by the county.

**2. COUNTY BONDS — VALIDITY — CONSTITUTIONAL LAW—PROVISION FOR SINKING FUND.**

The constitution of Texas provides (article 11, § 7) that "no debt for any purpose shall ever be incurred in any manner by any city or county, unless

provision is made àt the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon, and to provide at least 2 per cent. as a sinking fund." *Held*, that it is the duty of the county commissioners' court, contemporaneously with the execution of a contract for the building of a bridge to be paid for in county bonds, to levy a tax for a sinking fund and interest, and in default thereof the bonds are void, and that a levy made some six months after the execution of the contract, "to create a sinking fund for bridge bonds," etc., without containing any reference to the bonds provided for by the contract in question, could not be regarded as a fulfillment of the constitutional requirement.

This was an action by Albert Wade against Travis county, Tex., to recover upon interest coupons of certain county bonds. Defendant demurs to the complaint.

West & Cochran, Geo. F. Pendexter, and T. W. Gregory, for plaintiff.

Fiset & Miller, for defendant.

Before McCORMICK, Circuit Judge, and MAXEY, District Judge.

MAXEY, District Judge. Suit is brought by the plaintiff, who is a citizen of the state of Illinois, against Travis county, a municipal corporation of the state of Texas, to recover upon interest coupons which have been detached from 47 certain bonds issued by the defendant for the purpose of building an iron bridge across the Colorado river. Defendant demurs to the petition. Plaintiff is the owner and holder of coupons representing the interest due on all of said bonds April 10, 1893, April 10, 1894, and April 10, 1895, for $60 each; and the suit is brought to recover the amount thereof, with interest. The contract providing for the construction of the bridge, and the issuance of county bonds in payment therefor, was executed by the King Iron Bridge & Manufacturing Company on the one hand, and the duly-constituted county authorities on the other, July 3, 1888. Briefly stated, by the terms of the contract the bridge company agreed to erect the superstructure of an iron bridge over the Colorado river, in a thorough, workmanlike manner; the work to begin on the 3d day of August, 1888, and to be completed on the 15th day of November, following. In consideration of the erection of the bridge the county agreed to pay the bridge company the sum of $47,000, in bonds payable in 20 years, and bearing 6 per cent. interest, payments to be made as follows: 50 per cent. of the value of the work as the work progressed, and the balance on the final acceptance and completion of the bridge.

Before entering upon the merits of the case, a preliminary question has been suggested by the district judge who is sitting with the circuit judge, touching the disqualification of the former to participate in the decision. That question is as follows: The district judge is a resident and citizen of Travis county, Tex., and a taxpayer thereof. This suit involves the validity of bonds and coupons issued by the county. The question arises, has the district judge such direct pecuniary interest in the result of the suit as disqualifies him from sitting in the case? Authorities examined by the court leave the question in some doubt, and, for the purpose of having it definitely determined by an appellate tribunal, we have concluded to hold that

disqualification on the part of the district judge does not exist. See Rev. St. U. S. § 601; City of Dallas v. Peacock (Tex. Sup.) 33 S. W. 220; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960; Moses v. Julian, 45 N. H. 52; Peck v. Essex Freeholders, 21 N. J. Law, 656; Gregory v. Railroad Co., 4 Ohio St. 675; Pearce v. Atwood, 13 Mass. 324; Dayton v. Crane, 36 N. J. Law, 394; Board v. Fennimore, 1 N. J. Law, 190. And we suggest to counsel the propriety of reserving proper exceptions, in order that the point may be conclusively settled by the court of appeals.

The merits of the controversy involve interesting though not difficult questions for solution. The demurrers of defendant challenge the plaintiff's right to recover on the ground that, at the date of the execution of the contract between the bridge company and the county, no provision was made to pay the interest on the debt created and provide a sinking fund, as required by the organic law. The petition and accompanying exhibits fail to disclose that the county commissioners' court made special provision, by order or resolution, touching a sinking fund, or interest on the particular bonds in question. But it is insisted by plaintiff that on the 23d day of February, 1888, the contract having been executed on July 3, 1888, the county commissioners' court, at a regular term thereof, levied taxes for the year 1888 on all taxable property of the county, as follows: "An annual ad valorem tax of 20 per cent. for general purposes, and an annual ad valorem tax of 15 per cent. for road and bridge purposes, on each $100 worth of property situated in said county and taxable by law;" and, further, that on the 13th day of February, 1889, the commissioners' court of the county levied taxes for the year 1889 as follows: "An ad valorem tax of 15 per cent. on each $100 worth of property for road and bridge purposes; and an ad valorem tax of 5 cents on each $100 worth of property to create a sinking fund for bridge bonds, and to pay the interest of said bonds." In this connection, it is further alleged in the petition that the defendant delivered to the bridge company, on its contract for erecting the bridge, bonds as follows: On December 6, 1888, 5 bonds; on December 22, 1888, 10 bonds; on February 12, 1889, 10 bonds; and on July 3, 1889, the remaining 22 of said 47 bonds. The contention of the plaintiff is that, in making the general tax levies above set forth, the county intended to provide for a sinking fund and interest on the bonds issued to the bridge company. The defendant, however, insists that, at the date of the execution of the contract for erecting the bridge, the commissioners' court should have made a distinct and specific provision for such interest and sinking fund. The constitutional provision bearing upon the question is the following (section 7, art. 11):

"But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon, and to provide at least two per cent. as a sinking fund."

The imperative mandate of the constitution is that no debt, for any purpose, shall ever be incurred in any manner by a county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax for the interest and sinking fund above

specified. "The word 'debt,'". says Mr. Justice Denman, "as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were at the date of the contract within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation." McNeill v. City of Waco (Tex. Sup.) 33 S. W. 324, citing authorities. And we think, as intimated in McNeill v. City of Waco, that a contract entered into for the construction or erection of any public improvement authorized by law would be the creation or incurring of a debt, within the meaning of the constitution. It follows that contemporaneously with the execution of the contract by the defendant and bridge company, to wit, July 3, 1888, the county commissioners' court should have made provision, by levy of a tax or otherwise, for a sinking fund and the interest on the bonds issued for the erection of the bridge. See Millsaps v. City of Terrell, 8 C. C. A. 554, 60 Fed. 193; Berlin Iron Bridge Co. v. City of San Antonio, 62 Fed. 882. The levy made by the commissioners' court in February, 1888, could not be held applicable to the bonds in controversy, for the manifest reason that the contract for the erection of the bridge was not then in existence, nor even in contemplation of the parties, so far as the allegations of the petition disclose. The general levy made in February, 1889, cannot be held applicable to the bonds of the bridge company, for two reasons: First, it was made some six months after the execution of the contract; and, second, the order of the commissioners' court authorizing the levy makes no reference whatever to the bonds in controversy, nor to the contract between the county and the bridge company. In other words, no provision was made, by levy of a tax or otherwise, by the county commissioners' court, either contemporaneously with the execution of the contract, or subsequently, for a sinking fund and interest on the bonds issued for the construction of the bridge. See Bassett v. City of El Paso, 88 Tex. 169, 30 S. W. 893. Hence we are led to the conclusion that the bonds, and, as a necessary corollary, the coupons detached therefrom, are invalid, and not enforceable as such against the county. The demurrers of the defendant should be sustained, and it is so ordered.