T. G. HENDRICK ET AL. v. WALTER CULBERSON, COUNTY
ATTORNEY.

Decided April 14, 1900.

**1.  Election for Issuance of Bonds—Taxpayer.**

Under the law regulating elections to determine whether bonds shall be issued and restricting the right to vote therein to taxpayers of the county (Acts 1899, p. 258), one who owns property in the county at the date of the election, but who did not own it on January 1st of that year, so as to be a taxpayer chargeable by law with taxes for that year, is not a qualified elector.

**2.  Same—Tax Rolls—Prima Facie Evidence.**

Where such election is held in October, after the rolls are made up, the fact that a voter's name does not appear thereon is prima facie evidence that he is not a taxpayer.

APPEAL from Ector.  Tried below before Hon. W. R. SMITH.

*Hawkins & Camp,* for appellants.

*W. W. Martin,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This proceeding was instituted by appellants to contest the validity of an election held in Ector County, October 17, 1899, as provided in the Acts of 1899, page 258, to determine whether or not Ector County should issue bonds for the purpose of building a jail.

We are first asked by appellants to invalidate the act, in pursuance of which the election was held, upon the ground that it conflicts with the Constitution in restricting the right of suffrage at such elections to the qualified voters who are "property taxpayers."  But if we should thus annul the act, the law would be left in force which authorized the issuance of such bonds without any election, which would render this contest superfluous.  Rev. Stats., art. 877.  Possibly, however, the act might be invalid only in so far as it restricts the right of suffrage, and to that extent its invalidity be available to appellants, but as we are loath to declare an act of the Legislature unconstitutional in any respect, and do not find it necessary to do so in this case, we express no opinion upon this constitutional question so vigorously presented in appellants' brief.

In the third conclusion of law, to which error is assigned, the court held "that a property taxpayer is one who owns taxable property at the time he offers to vote, whether he is on the tax rolls or not, and whether or not he owned taxable property on January 1st is immaterial."  The following is the language of the act so construed: "Section 1.  Hereafter it shall not be lawful for the commissioners court of any county * * * to issue the bonds of said county * * * for any purpose authorized by law, unless a proposition for the issuance of such bonds shall have been first submitted to a vote of the qualified voters, who are

property taxpayers of said county, * * * and unless a majority of the said qualified property taxpayers, voting at said election, is in favor of the proposition for the issuance of bonds, then the said bonds shall not be issued."

In enacting this law the Legislature must have had in mind the provisions of our Revised Statutes on the subject of taxation, and particularly article 5066, reading: "All property shall be listed for taxation between January 1st and June 1st of each year, when required by the assessor, with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered. Any property purchased or acquired on the first day of January shall be listed by or for the person purchasing or acquiring it." In article 5102 persons liable to assessment of taxes on account of what they owned on the first day of January are referred to as "taxpayers." See also the five next succeeding articles.

According to our tax laws, then, the State and county tax upon property is assessed against the subjects of taxation annually, and whether or not one is liable to such assessment in any given year and county depends alone on whether or not he owned property on the first day of January of that year liable to assessment in that county. A "property taxpayer," within the meaning of the act in question, is one whose property rights were such on the first day of January of the year in which he offers to vote as to bring him within the class denominated "property taxpayers" of the county in which he offers to vote for that year. Whether or not the Legislature intended that his status in this respect should be determined exclusively by an inspection of the tax rolls we do not find it necessary to decide in this case. Evidently they did not mean to describe as "property taxpayers" for a given year a class of persons whose names did not appear, and could not be made to appear, on the tax rolls for that year, because they owned no property subject to taxation on the first of January; for no matter how much property they may have acquired after the first of January and owned on the day of election, that would not make them the subjects of taxation for that year. To the property taxpayer, and not to the property owner, is given the right to vote in elections to determine whether bonds shall be issued. Our conclusion then is that those voting at the election in question against whom no property tax had been assessed, and against whom none could be assessed, for the year and in the county in which they voted, were not, within the meaning of the law, "property taxpayers," though they owned property at the time they voted.

In the fourth conclusion of law, to which error is also assigned, the court held "that the fact that a person's name does not appear on the tax rolls as a property taxpayer does not prove prima facie that he is not a property taxpayer so as to shift the burden of proof." Ordinarily the absence of one's name from the tax rolls, which are required by law to contain a full list of taxpayers, would be taken as prima facie evidence that he is not a taxpayer, and doubtless the learned judge who tried this

case did not intend to hold to the contrary, but probably entertained the view that such evidence would not be sufficient to overcome the presumption indulged in favor of the legality of a vote which has been received and counted by the election officers. Undoubtedly the contestant in a proceeding to contest an election assumes the burden of showing the illegality of the challenged vote, but he is only required to do this by a preponderance of the testimony, and not beyond a reasonable doubt. It is only when a person offering to vote is objected to that evidence is heard and the case determined by the judges of the election as to his qualification, and in such case, if the vote is received, the word "sworn" is written opposite the name of the voter. Rev. Stats., arts. 1735, 1751. Nothing of that sort seems to have occurred in this case. Hence, in receiving the votes, the officers of election acted in a ministerial and not in a judicial capacity. People v. Pease, infra.

The rules of evidence governing trials in contested election cases are the same as in other cases. Rev. Stats., art. 1803. It is provided that: "If upon the trial of any contested election case, any vote or votes be found to be illegal or fraudulent, the court trying the same shall subtract such vote or votes," etc. Rev. Stats., art. 1804c. The question then is, did the tax rolls in this case make out a prima facie case of illegality?

The election, as already seen, was held in October, 1899, at a time when the tax rolls were in the hand of the collector, and presumptively contained the names of all taxpayers in Ector County for that year. The names of some of the voters whose right to vote was contested by appellants in this case appeared on the rolls as poll taxpayers *only,* from which the inference was strong, if not irresistible, that they were not property taxpayers at all, on the familiar principle of expressio unius exclusio alterius. In Abbott's Trial Evidence, page 750, it is laid down that "one, alien born, who voted, must be presumed to have been naturalized, in absence of evidence to the contrary; but if there is prima facie evidence that he was never naturalized, the burden is shifted." The leading case of People v. Pease, 27 New York, 45, is cited in support of the text and fully sustains it. See in this connection McCreary on Elections, secs. 428, 429, 430, 432.

We conclude that a prima facie case of illegality was made out by the production of the tax rolls showing that the names of the voters whose right to vote was contested did not appear there. It follows from these conclusions and the judge's conclusions of fact, which we adopt, that the judgment must be reversed and here rendered in favor of appellants.

*Reversed and rendered.*