**WENDOVER v. TOBIN, Mayor, et al.\***
**(No. 7214.)**

(Court of Civil Appeals of Texas. San Antonio. April 16, 1924. Rehearing Denied May 7, 1924.)

1. **Judges** ⚶⟹44—**Justices of Court of Civil Appeals held not disqualified, as city taxpayers, from sitting in bond election contest.**

Members of Court of Civil Appeals at San Antonio *held* not disqualified, by interest as taxpayers in that city, to sit in bond election contest, which does not involve validity of bonds issued or tax levied to pay them.

2. **Elections** ⚶⟹18—**City ordinance or charter provision, requiring more as qualification for voting than state Constitution, null and void.**

City ordinance or charter provision, requiring more as qualification for voting in city election than is required by state Constitution is null and void.

3. **Elections** ⚶⟹83—**Qualified voter of state, paying property taxes in city, may vote in city election without complying with charter provision as to production of tax receipts, etc.**

Under Const. art. 6, § 3, qualified voter of state, who has paid taxes on property in city of San Antonio can vote in city bond election, though his name does not appear on last assessment roll, and he fails to produce tax receipt or legal affidavit, etc., as required by section 5 of charter of San Antonio, section 4 of which fixes same qualifications for voting as are prescribed by state Constitution and laws.

4. **Elections** ⚶⟹300—**Dilatory tactics should not be allowed to delay trials in contested election cases.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 3055, 3065, as to precedence of contested election cases over other causes, and article 3066, requiring district clerk to make out and forward transcript on appeal without delay, dilatory tactics should not be allowed to delay trials in such cases; it being settled policy of law to expedite trial thereof as affecting public mind and demanded by public welfare.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by R. F. Wendover against John W. Tobin, Mayor of City of San Antonio, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Lewright & Lewright, of San Antonio, for appellant.

Joseph Ryan and John P. Pfeiffer, both of San Antonio, for appellees.

FLY, C. J. This is a contest of an election held in the city of San Antonio, on December 4, 1923, for the purpose of determining whether the qualified taxpayers desired the issuance of certain bonds, upon which money could be borrowed for the different objects mentioned in the proclamation submitting the different propositions. Appellant alleged that he was a duly qualified voter, under the Constitution and laws of Texas, and an actual taxpayer of the city of San Antonio, and entitled to vote on matters relating to the issuance of bonds and borrowing money by said city. It was alleged that on October 25, 1923, an ordinance was passed by John W. Tobin, as mayor, Phil L. Wright, as commissioner of fire and police, Frank H. Bushick, as commissioner of taxation, Ray Lambert, as commissioner of sanitation, parks, and public property, Paul E. Steffler, as commissioner of streets and public improvements, and Fred Fries, as clerk of the city, submitting the matter of issuing bonds to the voters, and they were sued as officers and also individually. There is not only an original petition in the record, but also a "first-amended statement of grounds of contest," a "first trial amendment of first-amended statement of grounds of contest," a "first supplemental petition of contestant, R. F. Wendover," and "plaintiff's first amendment of first trial amendment of first-amended statement of grounds of contest," and "contestant's second trial amendment of and to his first-amended statement of grounds of

contest." Appellees answered by four variously designated pleadings to the different petitions and statements of grounds of contest.

The court, after hearing the evidence, none of which was objected to by the contestant, rendered the following judgment:

"On this 4th day of February, A. D. 1924, this proceeding coming on to be heard, came ·the parties hereto in person and by their respective counsel, and the trial thereof having been continued from day to day until the 28th day of February A. D. 1924, the court, after hearing all pleadings herein filed, all evidence adduced and argument of counsel, is of opinion, and does so find:

"A. That on October 25, A. D. 1923, a regular and valid ordinance was passed by the commissioners of the city of San Antonio, and approved by the mayor thereof, in accordance with the charter of said city, and the Constitution and laws of the state of Texas, ordering an election to be held in said city of San Antonio, Tex., on Tuesday, December 4, A. D. 1923, at which nine (9) certain separate and distinct propositions to borrow money on the credit of said city for the purpose of effecting and constructing permanent public improvements, should be submitted to the qualified taxpaying voters of said city, as follows, to wit:

"(1) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of two million eight hundred thousand ($2,800,000) dollars; said bonds to be of the face denomination of one thousand ($1,000.00) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in amounts of seventy thousand ($70,-000) dollars each year respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess and to collect annually taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds, shall respectively mature; said loan being desired for the purpose of improving the San Antonio river, San Pedro and Alazan creeks, by widening, deepening, altering, changing, and damming the channels thereof, and constructing levees and walls along and near the same, and building dams, dykes, and reservoirs at and near the head waters and the water sheds of said river and creeks and tributaries thereof, all in a permanent manner, so as to prevent or ameliorate flood conditions and protect the public health and safety, and to acquire any lands and other property necessary therefor; said improvements to be constructed being the widening, deepening, altering, changing, and damming of the channels of the San Antonio river, San Pedro and Alazan creeks, and constructing levees and walls along and near the same, and building dams, dykes, and reservoirs at and near the head waters anu the water sheds of said river and creeks and tributaries thereof,

all in a permanent manner and acquiring any lands and other property necessary therefor?

"(2) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of two hundred thousand ($200,000) dollars; said bonds to be of the face denomination of one thousand ($1,000) dollars each, and to mature within a period of forty (40) years, viz.: To be payable serially in amounts of five thousand ($5,000) dollars, each year respectively, from one (1) to (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess and to collect annually, taxes sufficient to pay the interest on said bonds ,as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds, shall respectively mature; said loans being desired for the purpose of constructing, erecting and completing a public auditorium building in the city of San Antonio, and acquiring a site therefor; said improvements to be constructed being the erecting, construction, and completion of a permanent public building to be used as a public auditorium, and acquiring and completing the acquiring of a site therefor, within the corporate limits of said city?

"(3) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of one hundred thousand ($100,000) dollars; said bonds to be of the face denomination of five hundred ($500) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in amounts of two thousand five hundred ($2,-500) dollars, each year respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess and to collect annually, taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds, shall respectively mature; said loan being desired for the purpose of improving the facilities and service of the fire and police departments of said city by erecting suitable buildings therefor, and acquiring sites for same; said improvements to be constructed being permanent buildings for additional fire and police stations, and the acquisition of the necessary sites therefor?

"(4) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of one hundred thousand ($100,000) dollars; said bonds to be of the face denomination of five hundred ($500) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in, amounts of two thousand five hundred ($2,500),

dollars each year, respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess and to collect annually, taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds, shall respectively mature; said loan being desired for the purpose of constructing permanent improvements in the public parks and places belonging to said city; said improvements to be constructed being the construction of permanent buildings, plumbing, and other structures in the public parks and places belonging to the city of San Antonio, necessary for the convenience of the public in the use and enjoyment of said public parks and places?

"(5) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of two hundred and fifty thousand ($250,000) dollars; said bonds to be of the face denomination of one thousand ($1,000) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in yearly installments as nearly equal as practicable, each year, respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess and to collect annually, taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds, shall respectively mature; said loan being desired for the purpose of improving the public conveniences and traffic conditions of the public streets and public places of said city by opening, widening, and straightening public streets and places, and acquiring any parcels of land which may be necessary therefor; said public improvements to be constructed and effected being the permanent opening, widening, and straightening of public streets and places in the several wards of said city?

"(6) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of one hundred thousand ($100,000) dollars; said bonds to be of the face denomination of five hundred ($500) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in amounts of two thousand five hundred ($2,500) dollars each year, respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess, and to collect annually,

taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds shall respectively mature; said loan being desired for the purpose of improving the condition of the public streets of said city by building bridges; said improvements to be constructed being the construction of permanent bridges over streams crossing public streets in the several wards of said city?

"(7) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of four hundred and fifty thousand ($450,000) dollars; said bonds to be of the face denomination of one thousand ($1,000) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in yearly installments as nearly equal as practicable, each year, respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess, and to collect annually taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds shall respectively mature; said loan being desired for the purpose of improving the condition of the public streets and public places of said city by paving and grading the same and permanently marking the same; said public improvements to be constructed being the paving and grading and the erection of signs and markers, all in permanent manner, of the streets and public places, in the several wards of said city?

"(8) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of two hundred and fifty thousand ($250,000) dollars; said bonds to be of the face denomination of one thousand ($1,000) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in yearly installments as nearly equal as practicable, each year respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they determine and direct, and to be authorized to levy and to assess and to·collect annually, taxes sufficient to pay the interest on said bonds as same become payable and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds shall respectively mature; said loan being desired for the purpose of improving the condition of the public streets, and public places and the health and property of the people of said city by the laying and constructing storm sewers and drains with mains and laterals, and acquiring any parcel of land necessary therefor; said public improvements to be constructed being the laying and constructing in permanent manner

of such storm sewers with mains and laterals and drains in connection therewith, in the several wards of said city?

"(9) Shall the commissioners of the city of San Antonio be authorized to borrow money on the credit of said city and issue bonds of said city therefor, for permanent public improvements, in the sum of one hundred thousand ($100,000) dollars; said bonds to be of the face denomination of five hundred ($500) dollars each, and to mature within a period of forty (40) years, viz. to be payable serially in amounts of two thousand five hundred ($2,500) dollars, each year, respectively, from one (1) to forty (40) years, both inclusive; all of said bonds to bear interest from date at the rate of five (5%) per centum per annum, payable semiannually; said commissioners being authorized to negotiate said bonds in lots as they may determine and direct, and to be authorized to levy and to assess and to collect annually, taxes sufficient to pay the interest on said bonds as same become payable, and create a sinking fund as provided by law, sufficient to pay said bonds at maturity, viz. as each of said bonds and series of bonds, shall respectively mature; said loan being desired for the purpose of protecting the health of the people of the city by the construction of sanitary sewers and acquiring any parcels of land which may be necessary therefor; said public improvements to be constructed being the laying and constructing of a system of permanent sanitary sewers, with mains and laterals in each of the several wards of said city, extending and supplementing the present sanitary sewer system of said city?

"And that proclamation and notice thereof were properly given in accordance with law. That said election was so held on Tuesday, December 4, A. D. 1923, and the returns thereof made and canvassed in accordance with the charter and ordinances of said city, and the Constitution and laws of the state of Texas, and the result of said election properly certified, and promulgated; said result showing that all of the said several propositions were approved by a majority vote of the electors voting in said election but none by a two-thirds majority.

"B. That every one of said propositions distinctly and specifically specify the purpose for which the loans specified therein are desired, and the permanent public improvements to be constructed, and every one of said propositions is in accordance with said charter, Constitution, and laws and is sufficiently specific within itself.

"C. The court having opened all of the boxes used at said election in all the precincts of said city, and having recounted all the legal ballots in said boxes cast at said election does find that all of said propositions are sustained by a majority of said votes cast, the totals thereof being as follows, to wit: (1) For the first proposition, 8,320; against the first proposition, 7,133. (2) For the second proposition, 9,271; against the second proposition, 6,457. (3) For the third proposition, 9,338; against the third proposition, 6,391. (4) For the fourth proposition, 9,171; against the fourth proposition, 6,559. (5) For the fifth proposition, 9,260; against the fifth proposition, 6,448. (6) For the sixth proposition, 9,418; against the sixth proposition, 6,299. (7) For the seventh proposition, 9,218; against the seventh proposition, 6,332. (8) For the eighth proposition, 9,384;

against the eighth proposition, 6,426. (9) For the ninth proposition, 9,355; against the ninth proposition, 6,276. And therefore such loans are lawful, and such bonds are authorized to be issued in accordance with section 53 of the charter of said city.

"D. That the law and the facts are with contestees, and against contestant, R. F. Wendover.

"It is therefore ordered, adjudged, and decreed by the court that contestant, R. F. Wendover, recover nothing by reason of this proceeding, and that contestees, John W. Tobin, individually and as mayor of the city of San Antonio, Tex., Phil L. Wright, individually and as commissioner of fire and police of said city, Frank Bushick, individually and as commissioner of taxation of said city, Ray Lambert, individually and as commissioner of sanitation, parks, and public property of said city, Paul E. Steffler, individually and as commissioner of streets and public improvements of said city, and Fred Fries, individually and as city clerk of said city, go hence without day, and recover of and from R. F. Wendover, contestant, and the sureties on his bond or bonds herein filed all costs of this proceeding, for which let execution issue, to all of which contestant duly excepted and in open court gave notice of an appeal herein to the Court of Civil Appeals for the Fourth Supreme Judicial District of Texas, at San Antonio."

[1] The motion presented by appellant to disqualify this court to sit in this case because of interest as taxpayers is overruled. As said by Chief Justice Gaines, in City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220, after discussing the English rule:

"But we think the doctrine that being a mere taxpayer of a city does not work a disqualification is supported by the sounder reason, at least, as applied to municipalities existing under our laws."

In that case it was stated that judges of trial and appellate courts had uniformly sat in cases in which judgments could be rendered for or against cities in which they were taxpayers, and their right to do so had never been called in question. As said by the court:

"The principle is that the interest—if such it may be called—is so indirect, remote, and contingent that to hold a judge or jury not disqualified by reason thereof does not conflict with that fundamental doctrine * * * that a man cannot be made a judge in his own case."

The same doctrine is stated in Martin v. Somervell County, 21 Tex. Civ. App. 308, 52 S. W. 556; City of Marshall v. McAllister, 18 Tex. Civ. App. 159, 43 S. W. 1043; and Railway v. Bishop (Tex. Civ. App.) 34 S. W. 323. In the case of Wade v. Travis County (C. C.) 72 Fed. 985, which was heard by Judges McCormick and Maxey, the claim was made that Judge Maxey was disqualified because he was a resident citizen and taxpayer in Travis county and the suit involved the validity of bonds issued by the county. It

was held that such disqualification did not exist. We have carefully and fully considered this question in the companion case to this (Garess v. Tobin, 261 S. W. 430) and refer to the opinion this day handed down in that case. It must be borne in mind that no bonds have been issued by virtue of the election held on December 4, 1923, and no tax levied, and this is not a suit involving the validity of bonds or a tax levied to pay them. It is nothing but a plain, simple contest of an election, in which neither judge nor juror has any direct, personal, pecuniary interest.

[2, 3] The trial judge, after hearing evidence of appellant as to fraud and irregularities in the election, opened the different ballot boxes used at the election, and during the progress of a count of the ballots by the judge, appellant sought to prove that 6,621 persons, whose names were set out in an exhibit to his pleadings, had voted in favor of the several bond issues named in the call for the election, that none of them had made affidavits or produced tax receipts, that none of them had their names on the assessment roll of the city, but such proof was not allowed by the court, because section 5 of the charter of the city does not prescribe the only method of ascertaining whether a voter was a taxpayer. No offer was made to show that any person who cast a ballot at the election of December 4, 1923, was not a taxpayer. The Constitution, art. 6, § 3, prescribes that in all city elections to "determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes * * * in said city or incorporated town." The only qualification for a qualified voter of the state at an election, such as was held in the city of San Antonio, is that he shall have resided for six months immediately preceding the election in the city and pay taxes in the city, on property therein, and the charter of San Antonio does not seek to make additional qualifications for such voters, if it had the power to do so. All that has been attempted in section 5 of the charter is to provide for the officers of the election a method or methods by which it can be ascertained whether the voter has paid taxes on property in the city. That it was not intended to give the city power to create other qualifications for voters is clearly indicated in section 4, where it is provided that the "qualifications of voters shall be the same as are now or may hereafter be prescribed in the Constitution and laws of this state." A city ordinance or charter provision which requires more as a qualification for voting than the Constitution of the state requires is null and void. The Legislature has no power or authority to require other qualifications than those, for voting, provided in the Constitution. McCrary on Elections, § 49; McMahon v. Savannah, 66 Ga. 217, 42 Am. Rep. 65; Allison v. Blake, 57 N. J. Law, 6, 29 Atl. 417, 25 L. R. A. 480. If the Constitution had not named the qualifications, then the Legislature could name them. The charter does not seek to deny the right to vote if the name of the voter does not appear on the assessment roll, nor if he fail to produce a receipt or make an affidavit, or if the officer fails to write "sworn" thereon. If it did, it would be in the face of the constitutional provision that "only those shall be qualified to vote who pay taxes on property in the city." If the citizen is a qualified voter of the state and had paid taxes on property in the city, he can vote to determine the expenditure of money or assumption of debt by the city. Rhomberg v. McLaren, 2 Tex. Civ. App. 391, 21 S. W. 571; Hendrick v. Culberson, 23 Tex. Civ. App. 409, 56 S. W. 616; Hillsman v. Faison, 23 Tex. Civ. App. 398, 57 S. W. 920; Clark v. Willrich (Tex. Civ. App.) 146 S. W. 949; Hebert v. Scurlock (Tex. Civ. App.) 178 S. W. 711; Kempen v. Bruns (Tex. Civ. App.) 195 S. W. 645.

[4] This is a contested election case, and in article 3065, Vernon's Sayles' Civil Statutes, it is provided:

"Either the contestant or contestee may appeal from the judgment of the district court to the Court of Civil Appeals, under the same rules and regulations as are provided for appeals in civil cases; and such cases shall have precedence in the Court of Civil Appeals over all other cases."

The rule is given in such cases in the trial court where it is provided that contested election cases "shall have precedence over all other causes." Article 3055. It is the settled policy of the law to expedite the trial of such cases because they affect the public mind, and the public welfare and good demand a swift and expeditious disposal of them. It should be the desire and effort of every good and unselfish citizen, no matter how he may be affected by the result in such election case, to procure the speediest conclusion and settlement of such cases in the courts of the country. This court, in obedience to the mandate of the law, has given precedence to this cause, and has given it the court's most earnest and painstaking investigation. As an evidence that dilatory tactics should not be allowed to delay trials in contested election cases, the rule prevailing in other cases of appeal that the transcript shall be prepared upon the application of one of the parties and by him filed in the Court of Civil Appeals, is set aside, and it is provided that in case of an appeal in a contested election case "the clerk shall, without delay, make up the transcript and forward the same to the clerk of the Court of Civil Appeals for that district." Article 3066. Independent of what the party appealing might desire as to delay, it is the duty of the district clerk to make out the transcript without delay, and to forward the same to

the clerk of the Court of Civil Appeals, regardless of the order or wishes of the appellant.

The judgment is affirmed.