### JONES v. SCHOOL DIST. NO. 96 et al.

No. 20643.   Opinion Filed   June 10, 1930.

Commissioners' Opinion Division No. 2.

R. E. Davenport and J. H. Williams, for plaintiff in error.

Melton & Melton, for defendant in error.

HALL, C. Wight Jones, a resident taxpayer residing in school district No. 96 in Grady county, brought this action against the school board of that district to enjoin the issuance of certain school district bonds authorized by a vote of the people. The basis of the complaint is that a sufficient number of persons having resided in the school district for a period of over three months did not vote for the bonds to authorize their issuance. The case was tried on a stipulation of facts, to the effect that without the affirmative votes of certain persons who, at the time, were bona fide residents of the school district, and possessing the constitutional qualifications to vote at other elections, but had not resided in the school district for a period of more than three months immediately preceding the election, the bonds would have been defeated. In other words, the issue is a question of law; and the question of the correctness of the decision of the trial court depends upon whether or not a person who has all the qualifications enumerated in section 1 of art. 3 of the Constitution, and who is a bona fide resident of the school district, may vote at a school district bond election, or whether a period of more than three months is required as a condition precedent to voting at such election. The Constitution, art. 3, sec. 1, in defining qualified electors, provides, among other things, that they must be persons over the age of 21 years, citizens of this state and the United States, and who have resided in the state one year, in the county six months, and in the election precinct 30 days next preceding the election.

Section 10283, Comp. Stat. 1921, in regard to the issuance of bonds of a school district, provides that the electors must have been bona fide residents of the school district for more than three months next preceding the school bond election.

It will be thus seen that the Constitution provides, among other things, as a qualification to vote, a residence of only 30 days in the election precinct; and that Comp.

Stat. 1921, sec. 10283, provides for more than three months' residence within the limits of the school district as a prerequisite to the right to vote on the proposed issuance of bonds for the school district.

The only question for determination here is whether or not the Legislature can prescribe a different or an additional qualification than that which is contained in the Constitution. Of course, before the determination of that question, it is necessary to determine whether or not a legislative provision requiring a residence of three months as a condition precedent to the right to vote in a school district bond election, is a modification of the qualifications enumerated in the Constitution.

The trial court held the act to be in conflict with the Constitution. We think his conclusion was correct.

In addition to the provision of section 1 of art. 3 of the Constitution, providing the period of residency necessary for one to become an elector, section 26 of art. 10 of the Constitution provides as follows:

"No county, city, town, township, **school district,** or other political corporation, or subdivision of the state, shall be allowed to become indebted, * * * to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the **voters thereof,** voting at an election, to be held for that purpose." (Emphasis ours.)

In view of the fact that the Constitution (art. 3, sec. 1) does not specifically mention school districts or other municipalities, such as a township, town or city, it might be said, with some force of argument, that there is no conflict between the provisions in section 1, art. 3, of the Constitution, providing a residence of 30 days in the precinct as a prerequisite to voting, and the provisions in section 10283, Comp. Stat. 1921, prescribing a residence of over three months in the school district. But when we consider the provisions of section 1 of art. 3, in connection with the language of section 26 of art. 10 (of the Constitution), which has express reference to three-fifths of the voters of the school district, it is reasonably clear that the words **"voters in the school district,"** or equivalent language, "voters thereof," were used in reference to and within the meaning of the other provisions of that same document defining the qualifications of a voter or an elector.

It has become definitely settled that where the qualifications of electors are fully defined in the Constitution, a law which assumes to prescribe any additional qualification as a condition precedent to the right to vote, or prescribing a longer residence than that required by the Constitution, is unconstitutional and void. 20 C. J. 66; North Carolina v. Canady, 73 N. C. 198, 21 Am. R. 466; Wendover v. Tobin (Tex. Civ. App.) 261 S. W. 434; White v. Multnomah County, 13 Ore. 317, 10 Pac. 484; Attorney General v. Detroit, 78 Mich. 545, 44 N. W. 388. The rule is stated in Ruling Case Law, vol. 9, p. 1034, in this language:

"It is a generally accepted rule that the enumeration in a state Constitution of the classes of citizens who shall be permitted to vote is to be taken as to all matters within the purview of the provisions as a complete and final test of the right to the exercise of that privilege, and that the Legislature can neither take from nor add to the qualifications there set out unless the power to do so is expressly or by necessary implication conferred upon it by the Constitution itself."

We think that the constitutional provision (art. 3, sec. 1) was intended to be all-embracing; and this being true, any legislative act existing at the time of the adoption of the Constitution or subsequently enacted purporting to prescribe a longer residence as an additional qualification to a right to vote on the issuance of school bonds, is in conflict with the Constitution, and therefore void.

This statute (section 10283, Comp. Stat. 1921) antedated the Constitution; that is, it was enacted when Oklahoma was a territory. Since the adoption of the Constitution, the Legislature has never legislated on the particular subject other than the formal adoption of the Revised Laws of 1910, which included this statute among many others, some in conflict with and some not in conflict with the Constitution. That fact, however, is not controlling, but only goes to the motive and reason for the existence of the statute.

It is the individual opinion of the writer that the question before us is not even close; and that the meaning of the Constitution is clear; but, even if it were otherwise, we must recollect that, in determining the constitutionality of a statute, it is a rule of universal application adhered to by the highest courts of the different states and the Supreme Court of the United States, that in cases where the question of its constitutionality is not well-defined, and where the matter is not easy to determine, the construction given it by executive and administrative officers of the government for a long time, will be given consideration and is persuasive. In this connection, the Attorney General, the ex-officio bond commissioner of this state, has always and has consistently given the matter the construction which we are giving

it in this opinion; that is, the Attorney General has consistently held that the requirement of a residence of three months as a right to vote in the school district bond election, as provided in section 10283 of the statutes, is in conflict with the mandates of the Constitution.

Furthermore, a reference to legislative policy is often helpful in cases where the line of demarkation in constitutionality and unconstitutionality of the statute is not well defined.

For example, when we consider the subject-matter before us, our attention is directed to the fact that there are other important municipalities and subdivisions of the state than school districts. These municipalities are cities, towns and townships; and it may be correctly said that the Legislature has not enacted, and has not attempted to enact, any legislation tending to fix any special period of residence for the voter as a prerequisite to voting at an election for the issuance of bonds of a city, town or township. In other words, a person who is a qualified elector or voter, and residing outside of some city or town within a county, can move into a town or city within the county, and remain in the voting precinct 30 days and be a qualified voter, to vote either for or against the issuance of bonds of the city or town. No additional residence other than is contained in the Constitution, is required as a condition precedent to his voting at such election. On the other hand, if the provisions of section 10283 of the statutes, with reference to the residence of the voter, are in force and effect, the voter who could cast his ballot for or against the proposed issuance of bonds of the city, would necessarily have to wait 61 days before he could vote for or against the issuance of bonds of the school district in which he was residing in that same city. Neither the makers of the Constitution nor the Legislature ever intended such a preposterous situation. The Constitution meant that the procedure for the issuance of bonds of a municipality, school district or otherwise, should be uniform; save and except the school district seems to have been a somewhat favorite of the law, in that a more liberal method of issuing school bonds was recognized than in issuing bonds of any other municipality or subdivision of the state, because the Constitution (sec. 3, art. 3) provided that at such elections women should have the equal right of suffrage.

The statute with reference to the period of residence required of the voter, is either valid or invalid. It is either the law or it is not the law. When the statute was enacted pursuant to a policy which has generally been observed relating to school matters, less technical and stringent rules were applied with regard to schools and school revenues than was applied to other municipalities. This statute, which was enacted in 1895 by the Oklahoma Territorial Legislature, permitted persons not citizens of the Oklahoma Territory, or not even citizens of the United States, but who had lived in the school district for three months, to vote at school district bond elections. If this statute is still operative or in effect, a citizen of Canada or Czecho Slovakia can come into this state, take up a residence within a school district, and reside there three months, and be a qualified voter at a school district bond election. The purpose of the Constitution was to prescribe all the necessary qualifications of the voters at a municipal bond election, and it did so in section 1, article 3, of that document.

If the Legislature can fix the period of residence at three months as a condition precedent to voting at a school district bond election, or at any other municipal bond election, it can fix such period at three years. By such legislation, the annual or bi-annual transient citizen would be disfranchised altogether. This would reduce the suffrage provisions of the Constitution and the one directly affecting the rights of property, to a mere scrap of paper; and the qualifications of a voter in Oklahoma could be as varied as the colors in Joseph's coat.

That the provisions of the Constitution cannot be supplemented by an act of the Legislature, has been definitely settled by the highest courts of the various states. This exact question was settled in the early case of North Carolina v. Canady, 73 N. C. 198, decided in 1875, and the recent case of Wendover v. Tobin (Tex. Civ. App.) 261 S. W. 434, decided in 1924.

In the first and second paragraphs of the syllabus of the North Carolina case, it was held that:

"Cities and towns, like counties and townships, are parts and parcels of the state, organized for the convenience of local self-government; and the qualifications of voters are the same, to wit, citizenship, 21 years of age, twelve months residence in the state, and 30 days in the city or town.

"The General Assembly cannot in any way change the qualifications of voters in state, county, township, city or town elections. Hence, so much of the act amending the charter of the city of Wilmington, ratified on the 3rd day of February, 1875, as requires a residence of 90 days instead of 30 is unconstitutional and consequently void."

The analogy between the present case and

the case of North Carolina ex rel. v. Canady, is so exact that we deem it at least interesting and illuminating to submit the principal observations of the brilliant jurist, Reade, who prepared the opinion in that case:

"Our government is founded on the will of the people. The will is expressed by the ballot. The ballot embraces every citizen 21 years old, who has had a residence in the state for twelve months and in the county where he offers to vote for 30 days. There is no other qualification required. Property qualification for voters and office holders, which our former Constitutions required, and which many thought important, have passed away, and are now regarded as antiquated. Not only is freedom to vote and hold office secured in our present Constitution, but it is so imbedded in the hearts of the people that it was thought necessary to stipulate against any interference with it by a contemplated Convention to alter the Constitution. The act of the last General Assembly calling a Convention has a provision that the Convention 'shall not require, or propose any educational or property qualification for office, or voting,' and requires the delegates to take an oath to observe it.

"Whether that is wise or unwise, the court can give no opinion. Our province is to expound the Constitution and laws as they are made, and not to make them.

"The Constitution provides that every male person 21 years old, resident in the state twelve months, and in the county 30 days, shall be an elector, art. VI, sec. 1. An elector for what? The Constitution does not say for what. Does it mean elector for President, or for members of Congress, or for Governor, or for judges, or for members of the General Assembly, or for county officers, or for township or town officers, or for what else? There it stands by itself, without explanation—that every such person shall be an elector—a voter. It evidently means to designate those persons as a class, to vote generally whenever the polls are opened and elections held for anything connected with the general government, or the state or local governments. Just as a class of persons are designated as qualified for jurors.

"And so in art. VII, sec. 1, it is provided that all county elections shall be by 'the qualified voters thereof.' But who are they? There is no way of determining except to look back to the class designated above.

"And so the 5th section provides that township elections shall be by the 'qualified voters thereof.' And we have to look to the class to find out who they are.

"And so art. VII, sec. 7, provides that no county, city, town, or other municipal corporation shall contract any debt, etc., unless by a vote of a majority of the 'qualified

voters therein'; and we have to look to the class to find who they are.

"Here counties, cities, and towns are grouped together; and so are their qualified voters. And except in this way there are no qualifications prescribed for voters in cities and towns. But cities and towns, like counties and townships, are parts and parcels of the state. * * * And the qualifications of their voters are the same. It follows that the General Assembly cannot in any way change the qualifications of voters, in state, county, township, city or town elections.

"And yet the act, which we are considering, requires a residence of 90 days, instead of 30. And if 90 days may be required, a year, or years, may be. And so in many of our young and growing towns, a majority of the citizens may be excluded, and the government given to 'the oldest inhabitants'; or, if long residence may be made a qualification, so it may be made a disqualification, and then the government may be given to the youngest inhabitants. And so, if these qualifications may be added, then any others may; just as we find that in one of the town charters granted by the last General Assembly, it is provided that, in addition to the citizens of the town, all persons who have lived in the county twelve months 'and who own taxable real estate in said towns, who have paid all the taxes,' etc., shall be allowed to vote. Acts of 1874-'5, chap. 157, private laws. Surely the Legislature had no power to put any portion of the people of the state under such a government. If they can do that, then they can put Wilmington under the government of the landowners of New Hanover county.

"For illustration: A man presents himself at a town election and says, 'I have voted in the state election, in the county election, in the township election, and now I want to vote in the town election, where I have lived for 30 days.' His vote is rejected, because he has not resided there 90 days. In vain we look in the Constitution for any such qualification. The General Assembly has disfranchised him, and that in a case which comes much nearer home to him than any other election; for the town government affects his business, trade, market, health, comfort, pleasure, taxes, property and person.

"We are of the opinion that the qualifications for a voter in a city or town are, citizenship, 21 years of age, twelve months residence in the state, and 30 days in the city or town."

The case of Wendover v. Tobin, supra, is also squarely in point, on principle, but we deem it unnecessary to quote at length from that decision. The holding in the decision of that case is reflected by the second paragraph of the syllabus thereof, which reads as follows:

"City ordinance or charter provision, re-

quiring more as qualification for voting in city election than is required by state Constitution is null and void."

The matter resolves itself into a question of constitutional limitation upon legislative power. On this point, that famous commentator on constitutional law, Cooley, in his "Constitutional Limitations" (5th Ed.) p. 578, says:

"It is a well settled rule of law that when the Constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference, to add to the condition, or to extend the penalty to other cases.'"

Counsel for plaintiff in error almost wholly base their argument upon the decisions of this court in the cases of Oelerking v. Hiatt, Board of Education, 69 Okla. 92, 170 Pac. 476; and Stephens v. Union Graded School District No. 2, 136 Okla. 10, 275 Pac. 1056.

We fail to see where either of these cases lend support to the contentions of plaintiff. The particular question involved herein was in no wise involved in either one of the foregoing cases. In the Oelerking Case, the question involved was the right of a female to vote at a school bond election. That case arose before the constitutional amendment giving equal franchise to women, and the Constitution itself (sec. 3 of art. 3) then provided that female citizens of this state possessing like qualifications of male electors were qualified to vote in school district elections. However, that provision by its terms was subject to modification by the Legislature. The Legislature had never modified it except as to independent school districts at the time the Oelerking Case was decided, and the court very properly held that under section 3 of art. 3 of the Constitution, and section 7836, Revised Laws 1910 (sec. 10283, Comp. Stat. 1921), a female possessing the other necessary qualifications could vote at a school bond election. The language of the court, or the author of the opinion, at page 93 of the official report, was correct in stating that the qualifications of an elector involved in that particular case, as defined by the said section of the statute, had never been changed. The other language which he used to the effect that an elector as defined in that statute is still in force and effect, was simply by way of recital or purely dictum.

The case of Stephens v. Union Graded School District, supra, is by no means in point. The question there was not the legal residence of the persons for a period of three months, but the question was whether they were bona fide residents or rather residents at all. That case is webbed around

that sole proposition. The matter is that case pertaining to the period of residence for more than three months, appears in a quotation from the statutes, and is incidental to the decision in that case. In other words, the expression "bona fide residents for more than three months" was made simply by way of recital. In that case it is not even obiter.

For the reasons herein stated, the judgment of the trial court is hereby affirmed.

BENNETT, LEECH, FOSTER, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.