EXCISE BOARD OF MARSHALL COUNTY et al. v. SCHOOL DIST No. 34, MARSHALL COUNTY.

No. 23256. Opinion Filed March 25, 1932.

Rehearing Denied April 26, 1932.

Reuel W. Little and E. S. Hurt, Co. Atty., for plaintiffs in error.

Don Welch, for defendant in error.

ANDREWS, J. At the annual meeting of school district No. 34, Marshall county, Okla., a majority of the voters thereof voting at the meeting voted to increase the rate of levy for the school district by an amount of ten mills above the five-mill limitation. Thereafter the school board, at a meeting called for that purpose, prepared, executed, and certified to the county excise board a financial statement and estimate of the needs of the school district for the ensuing fiscal year. They attached thereto their certificate showing the result of the election as to the rate of levy. The certificate showed that 27 voted for the increased levy and that none voted against it. Thereafter the excise board revised the statement of estimated needs certified to it by the school board and reduced the amount thereof for current expenses from $4,322 to $2,804. The excise board fixed the rate of levy at 4.53 mills. Upon the application of the school district, as plaintiff, the district court of Marshall county granted a writ requiring the excise board to approve the estimate certified to it by the school board and to make a levy accordingly. From that judgment the county excise board has appealed.

Among other things, the county excise board contends that it had the authority

to reduce both the estimate and the rate of levy for the reason that the action of the school district was void because the estimate certified to and filed with the county excise board by the school board was not voted on and approved by the voters of the school district.

At the time of the adoption of the Constitution of Oklahoma, the Legislature of the territory of Oklahoma had made provision for the levying of taxes. It had provided a maximum and minimum rate of general territorial tax (section 5995, Wilson's Statutes 1903) to be fixed by the territorial board of equalization, the territorial auditor, or the board of county commissioners (section 5998, Wilson's Statutes 1903). Cities had been authorized to levy and collect taxes for general revenue purposes not exceeding a maximum rate fixed. Sections 370 and 466, Wilson's Statutes 1903. The boards of trustees of incorporated towns had been authorized to determine the general amount of tax for the current year. Sections 519 and 521, Wilson's Statutes 1903. The inhabitants of school districts qualified to vote at a school meeting had been authorized to vote annually a tax on all the taxable property in the districts at the annual school meetings for school purposes. Section 6154, Wilson's Statutes 1903. Boards of education of independent school districts had been authorized to levy a tax for the support of schools. Section 6262, Wilson's Statutes 1903. The taxes so levied were required to be certified to the county clerk, who was authorized and required to place the same on the tax roll to be collected by the treasurer of the county.

By the provisions of section 2 of the Schedule of the Constitution, the laws of the territory of Oklahoma, at the time of the admission of the state into the Union, which were not repugnant to the Constitution and which were not locally inapplicable, were extended to and remained in force in the state of Oklahoma until they expired by their own limitation or were altered or repealed by law. By that provision the constitutional convention and the people of the state took notice of the statutes of the territory of Oklahoma. They doubtless had those statutes in mind when they provided by section 20, art. 10, of the Constitution that the Legislature should not impose taxes for the purpose of any county, city, town, or other municipal corporation. That was but a continuation of the territorial policy whereby the territorial Legislature did not impose taxes for the purpose of any county,

city, town, or other municipal corporation. Legislation respecting the imposition of taxes for the purpose of any county, city, town, or other municipal corporation is subject to that provision of the Constitution. It was further provided in section 20, art. 10, supra, that the Legislature might, by general laws, confer upon the proper authorities of counties, cities, towns, or other municipal corporations, respectively, the power to assess and collect taxes. That was but a continuation of the existing territorial practice. Legislation with reference to the assessing and collecting of taxes for counties, cities, towns, or other municipal corporations is subject to that provision of the Constitution and the two limitations therein contained: First, it must be by "general laws"; and second, the power may be vested only in "the proper authorities thereof."

Under the territorial statutes, the "proper authorities" of a common school district to levy a tax for the school district were the inhabitants of the school district qualified to vote at a school meeting. Those statutes were extended in force by the Schedule of the Constitution and they were adopted by the terms of section 9, House Bill No. 380, ch. 71, art. 1, Session Laws 1907-08. Thereby they remained "the proper authorities thereof" after the adoption of the Constitution. By the provisions of section 9, art. 10, of the Constitution, they were made "the proper authorities thereof" to increase the annual rate of levy therein provided by an amount not to exceed ten mills on the dollar valuation. That the procedure for the making of a school district tax levy may be changed by the Legislature was held in Tilley v. Overton, Co. Treas., 29 Okla. 292, 116 P. 945, wherein it was held that the procedure to be followed was to be prescribed by the Legislature, and in McCreary v. Lee, 45 Okla. 201, 145 P. 777, wherein it was held that the Legislature was left entirely free to determine how school district elections should be held, the time and place and the manner of holding the same, and what should constitute a legal election. We know of no decision holding that the Legislature may provide a procedure for the making of school district tax levies which is in conflict with the provisions of section 9, art. 10, of the Constitution.

The authority that can be granted by the Legislature "by general laws" to "the proper authorities" of counties, cities, towns, or other municipal corporations is limited

by the provisions of section 9, art. 10, of the Constitution. By those provisions limitations are placed upon the maximum rate of taxation on an ad valorem basis that can be authorized by the Legislature and the maximum rate of taxation on an ad valorem basis that can be authorized by a vote of a majority of the voters of the school district voting at an election held for that purpose.

By an exhaustive opinion written by Mr. Justice Hardy, this court, in Trustees, Executors & Securities Ins. Corp. Ltd., v. Hooton, Co. Clerk, 53 Okla. 530, 157 P. 293, held that the provisions of section 20, art. 10, of the Constitution did not apply to the tax involved in that action, the tax involved therein being what is commonly known as the "registration of instruments tax." Chapter 246, Session Laws 1913, as amended by chapter 105, Session Laws 1915. In discussing the question the court quoted from Thurston, Co. Treas., v. Caldwell, 40 Okla. 206, 137 P. 683, and said:

"The act does not seek to levy a tax for purely municipal purposes, but, on the contrary, is one in which the state has a sovereign interest, and is not limited by the section mentioned. Hocker v. Payne, 40 Okla. 458, 139 P. 121; Thurston Co. Treas., v. Frank, 40 Okla. 463, 139 P. 124; Thurston, Co. Treas., v. Hine, 40 Okla. 465, 139 P. 125; Ex parte Ambler, 11 Okla. Cr. 449, 148 P. 1061; A., T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 P. 921, 40 L. R. A. (N. S.) 1."

It reviewed the authorities from other states construing constitutional provisions similar to our section 20, art. 10, and holding to the same effect.

An examination of the decision in the case of Thurston, Co. Treas., v. Caldwell, supra, discloses that there was therein involved taxes of the city of Purcell. In the decision of that case the court quoted from the decision of this court in Board of Education of City of Ardmore v. State ex rel. Best, 26 Okla. 366, 109 P. 563, as follows:

" 'The organization and maintenance of a free public school system for the education of the children of cities containing a population of 2,000 or over ought to be a matter of as much general state concern as the education of the balance of the children of the state, and ordinarily this function of government is not delegated to such municipalities. "In modern days it is not only considered a governmental function, but also, and especially in the United States, an imperative governmental duty to provide for and maintain a system of public educa-

tion. This is true not only because through education is the individual rendered better capable of rational and good government, but also because education adds to his economic efficiency." 3 Abbott on Municipal Corporations, 2379.' "

—and it said:

"It is true that some courts and textwriters have taken the view that the local institutions of self-government, regardless of its express constitutional limitations, are so integral a part of American institutions that they are to an extent independent of legislative control. But even those who press this view most extremely acknowledge the absolute supremacy of the Legislature in many matters of chiefly local interest in which, nevertheless, the state has a sovereign interest, among which may be mentioned state control over local police protection; state control over local taxation for streets, highways, and bridges; state control over local taxation for schools; state control over local taxation for the public health. This subject is instructively treated by Mr. Gray, in chapter 7 of his work on 'Limitations of Taxing Power and Public Indebtedness,' where the authorities will be found collected in the notes."

To the same legal effect is the decision of this court in Ex parte Shaw, 53 Okla. 654, 157 P. 900, construing the automobile license law.

In Thompson v. Rearick, 33 Okla. 283, 124 P. 951, the issue before the court was the application of section 9, art. 10, of the Constitution to the road improvement district statute, chapter 124, Session Laws 1910-11, and it was therein held that that act was repugnant to that provision of the Constitution.

In discussing section 9, art. 10, of the Constitution, Mr. Justice Williams, speaking for the court, said:

"It will be observed that it is therein provided, with two exceptions, that the total taxes, on an ad valorem basis, for all purposes, to wit, state, county, township, city or town or school district taxes, shall not exceed in any one year 31½ mills on the dollar. The exceptions relate to county levies for schools not to exceed two mills, and an additional ten mills to be levied by school districts, when voted for by the electors of such district.

"Section 9 is a limitation and not a grant of power; the limitation applying not only to the Legislature, but also to the counties, townships, cities or towns, and school districts."

The language of the last paragraph is general. It must be construed with refer-

ence to the issue before the court and concerning which the learned Justice was speaking. Neither of the exceptions stated in the first paragraph quoted were involved in that case. When the language of the last paragraph is examined with reference to the issue before the court at that time, it appears that the limitation referred to in the last paragraph is the limitation as to the total taxes on an ad valorem basis, and that it was not intended by the language of the last paragraph to hold that the exceptions stated in the first paragraph were not grants of power. We are forced to that conclusion, for the writer of the opinion therein said:

"We take it that said section 9 means just exactly what it says; that, except as herein otherwise provided, the total taxes, on an ad valorem basis for all purposes, shall not exceed in any one year 31½ mills on the dollar, with the two exceptions therein enumerated."

We repeat, section 9, art. 10, of the Constitution means just exactly what it says. In Schaff, Rec., v. Rea, Co. Treas., 103 Okla. 62, 229 P. 472, there was a similar general statement with reference to section 9, art. 10, of the Constitution, which was based on the general language used in the decision in Thompson v. Rearick, supra. In the first paragraph of the syllabus it was said:

"* * * Held, section 9 is a limitation, and not a grant of power, the limitation applying not only to the Legislature, but also to the counties, townships, cities or towns, and school districts. * * *"

The issue involved in that case was the question of "what is the limitation of the levy that may be made by the excise board of the county for separate and common school purposes?" As we have heretofore pointed out, the general language so used is not in accord with the provision of the Constitution under consideration here. That provision:

"* * * provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

In the language of this court in Board of Education v. Woodworth, 89 Okla. 192, 214 P. 1077: "The natural and appropriate office of a proviso in a statute is to restrain or qualify some preceding matter, and it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter," and the object, in the language of the Supreme Court of Illinois, in Legout v. Price, 149 N. E. 427, "* * * is to except something out of the general terms of the grant, statute, or other instrument to which it may be attached." To the same effect is the statement of the Supreme Court of the United States in Minis v. United States, 10 L. Ed. 799, wherein it was said:

"The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of its extending to cases not intended by the Legislature to be brought within its purview."

The distinction we have pointed out was recognized by this court in Schaff, Rec., v. Borum, Co. Treas., 82 Okla. 284, 200 P. 191, wherein Mr. Justice Kennamer used the following language:

"Section 9 of article 10 of the Constitution, except the provisos regarding extra levies for schools, supra, is a limitation directed to the Legislature. * * *"

The same language was used by Mr. Justice Lester in Simmons v. Stuckey, Co. Treas., 113 Okla. 200, 241 P. 124. In Board of Education of City of Guthrie v. Excise Board of Logan County, 86 Okla. 24, 206 P. 517, Mr. Justice Kennamer, in speaking for the court, called attention to the distinction in the following language:

"Section 9, art. 10, of Williams' Constitution imposes a limitation of 8 mills for county current expenses upon the taxing power of the state, which is the Legislature (Schaff v. Borum, County Treasurer, 82 Okla. 284, 200 P. 191), for county purposes. But any county may levy not exceeding 2 mills additional for a county high school and aid to common schools of the county under the proviso to section 9, art. 10."

In Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 P. 921, Mr. Justice Hayes, speaking for the court concerning the validity of section 2, art. 7, Sess. L. 1909, levying an ad valorem tax of one-fourth of one mill for common school purposes, said:

"It is quite common for the states, in maintaining a system of public schools, not only to levy a state tax to aid in the support of such schools, but to provide school districts with a system of government invested with power to levy tax for school district purposes to supplement the funds and efforts of the state to maintain a public school system, and the various school districts may thereby increase their public school facilities, subject to the limitations upon their power to tax, as the inhabitants of such districts may feel disposed to do.

Section 9, supra, does nothing further than place two limitations upon the power of any such school district to levy a tax. The first limitation applies when the levy is made by proper authorities without a vote of the people. The other limitation is upon the increase over the first levy that may be made by the vote of the people of the district."

In Tilley v. Overton, supra, it was held that the provisions of section 9, art. 10, of the Constitution, as to a school district levy for the support of common schools, might "be separated into two parts, the first of which authorizes a levy for a district of not more than five mills on the dollar each year," and the second "authorizes an additional amount to be levied. That additional amount shall not exceed ten mills on the dollar valuation," and that the section "authorizes, unqualifiedly, without restrictions or limitation so far as the Constitution attempts to regulate it, a levy for school district purposes not more than five mills on the dollar." This court said:

"The legislative intent was to authorize first a levy of a tax not to exceed five mills, leaving it to the Legislature to prescribe the manner, time, and by what authority this levy shall be made; but when a levy is to exceed five mills, which is authorized by the second part of the section, then there is placed upon the authority to levy such additional amount the constitutional restraint that it shall not be levied except with the approval of a majority of the voters of the district voting at an election thereon"

—and:

"The first five mills of which may be levied by such authority and under such procedure as the Legislature may from time to time prescribe, and the additional ten mills may be levied in like manner except that such levy shall never be made without the approval of the people of the district as prescribed in the second clause of the section."

Under the authorities cited, we hold that section 9, art. 10, of the Constitution is both a limitation and a grant of power and that it is a grant of power to a majority of the voters of a school district voting at an election held for that purpose to increase the annual rate of taxation on an ad valorem basis for school purposes by an amount not to exceed ten mills on the dollar valuation. By that constitutional provision "a majority of the voters thereof" is made "the proper authorities thereof" to increase the annual rate of taxation on an ad valorem basis for school district purposes by an amount not to exceed ten mills on the dol-

lar valuation. There is no authority for the Legislature to change that constitutional provision by making the action so taken subject to the approval of an excise board, where the rate of levy so authorized is needed for the proper conduct of the affairs of the school district and where the amount of the levy so fixed is not in excess of the amount necessary for the needs of the school district, as shown by the estimate of needs of the school district prepared by the school board and certified to the excise board. The procedure for the fixing of rates of school district levies and for the holding of the elections authorized by the provisions of the section was provided by section 2 of the Schedule of the Constitution, which extended the territorial legislation with reference to the holding of school district meetings and the levying of taxes for school districts. In the language of this court in Tilley v. Overton, supra, section 9, art. 10, supra, supplemented by those territorial statutes "is self-executing." In that case this court held that the territorial statutes above referred to were extended in force in Oklahoma. It is probable that the attention of the court was not then called to the provisions of House Bill No. 380, adopted by the Legislature at the 1907-08 Session, ch. 71, art. 1, p. 633, Session Laws 1907-08, in section 9 of which it was provided that:

"All levies for city, town, township and school district taxes for the periods hereinbefore indicated shall be made in the manner now provided by law, on or before the first Tuesday in August of said year, and shall be certified to the county clerk immediately thereafter and by him extended upon the tax rolls in the manner provided by law"

—for there was no reference made thereto in the opinion.

Section 6154, Wilson's Statutes 1903, was revised by the revision commission, and, as revised was adopted as section 7785. R. L. 1910. By the revision, the fifth paragraph thereof was eliminated, the reason assigned therefor in the note thereto being that that paragraph was "conflicting with sections 7376, 7378. et seq., chapter 'Revenue and Taxation'." The evident purpose was to change the provision by which the inhabitants qualified to vote at a school meeting were authorized to vote annually a tax on all the taxable property in the district and distribute the same. However, the change in the procedure was not found to be advisable, for, by the provisions of chapter 199, Session Laws 1915, that provision was

changed to provide that the school electors of any district at the annual meeting, shall determine by a majority vote the amount of excess levy, if any, required for the next ensuing fiscal year. Section 1 of that chapter was carried forward by the compilers as section 9708, C. O. S. 1921. There is nothing in that provision requiring the voters of a school district to approve the estimate made by the school officers for the conduct of the school. With reference to that section this court, in Missouri, K. & T. Ry. Co. v. Prince, Co. Treas., 133 Okla. 228, 271 P. 253, said:

"Under section 9708, the additional levy may be voted at the annual school meeting, and when such levy is so voted, it then becomes the duty of the school board, when making the estimate for the ensuing year, to attach to such estimate a certificate of the vote had at the annual meeting on the question of making such excess levy, and if such levy carried, if an excess levy is required, shall levy such additional levy not in excess of the amount voted."

. It was therein held that the section was not within the inhibition of section 57, art. 5, of the Constitution; that it was not repealed by section 9696, C. O. S. 1921; that it is in harmony with the provisions of section 19, art. 10, of the Constitution, and that it is "* * * a valid enactment."

The conflict between the provisions of section 9708, supra, and section 9696, supra, is the basis of this litigation. The excise board contends that that part of section 9696 prohibiting the excise board from reducing rates of levy or estimates of school districts is unconstitutional, and that under the provisions of section 9698, C. O. S. 1921, the excise board has the power to reduce rates of levy fixed by school districts and estimates made therefor. It contends that even though it has no authority "over the levy voted by the patrons," it has authority over the five mills allowed by law. It points out that there is a distinction between the two and that that distinction has never been passed upon by this court. It says: "Here we have one levy that is allowed by law, under our Constitution, and another levy that is allowed by the legislators of the school district. One is levied by one authority and another by another authority." It is not necessary for this court in this case to determine whether or not the excise board has authority over a five mills school district levy different from that over a 15 mills school levy authorized by the vote of a majority of the voters of the school district voting at an election held for that purpose, for when the voters of the school district have authorized the annual rate for school purposes to be increased by an amount not to exceed ten mills on the dollar valuation, the action of the voters of the school district operates to fix the maximum amount of rate of levy for school district purposes. Neither the Constitution nor the statutes provide for two levies for current expenses of a school district. They provide for only one levy for those purposes. In the absence of the consent of a majority of the voters of the district, the maximum rate of levy is five mills, but with that consent the maximum rate is 15 mills. When they have consented, the maximum rate fixed by them, not exceeding 15 mills, is the rate of levy for the school district.

By the provisions of section 9708, supra, and section 10339, C. O. S. 1921, the Legislature has determined and provided all of the things necessary to be determined and provided, as stated by this court in McCreary v. Lee, supra; that is, it has provided how the election should be held, the time. place and manner of holding the same, and what shall be held to constitute a legal election. Section 9, art. 10, of the Constitution, supplemented by those provisions, is in full force and effect.

Section 9696, supra, was adopted as a part of chapter 226, Sess. L. 1917. By that section it was provided that an increased rate of levy might be made only on condition that a majority of the taxpaying voters of the district voting thereon vote for the additional levy, and, by their majority vote, approve an estimate to be submitted to the county excise board. Thereby the Legislature attempted to impose two conditions upon the power granted to the school districts by the provisions of section 9, art. 10, of the Constitution. Chapter 226, supra, both in the title and in the body of the act, is specific as to the sections repealed thereby. There was no provision therein for the repeal of the provisions of the 1915 act, section 9708, supra.

The constitutional provision (section 9, art. 10, supra) is that the annual rate for school purposes may be increased by any school district on condition that a majority of the voters thereof voting at an election vote for said increase. The Legislature was without authority to impose a condition that the voters thereat should be taxpaying voters, for, by so doing, it deprived the electors of school districts of authority conferred upon them by the provisions of the Constitution. Section 1, art. 3, of the Con-

stitution defines "qualified electors," and section 3, art. 3, provides that female citizens shall be qualified to vote at school district elections. Section 9, art. 10, supra, must be construed in connection with those sections and, when those sections are construed together, they provide the qualifications for electors at school district elections. The term "school district elections," as used in section 3, art. 3, supra, is broad enough to embrace an election held for the purpose of authorizing an increased levy of taxes for school district purposes. Vogel v. Steelman, 53 Okla. 557, 157 P. 280. The Legislature is without authority of law to require an elector to be a taxpaying voter in order to vote at a school district election. The language used in section 9, art. 10, supra, is "voters thereof." The language used in section 26, art. 10, of the Constitution is "voters thereof," which refers to school districts. In Jones v. School District No. 96, 144 Okla. 10, 289 P. 268, this court said:

"But when we consider the provisions of section 1 of art. 3 in connection with the language of section 26 of art. 10 (of the Constitution), which has express reference to three-fifths of the voters of the school district, it is reasonably clear that the words 'voters in the school district,' or equivalent language, 'voters thereof,' were used in reference to and within the meaning of the other provisions of that said document defining the qualifications of a voter or an elector.

"It has become definitely settled that where the qualifications of electors are fully defined in the Constitution, a law which assumes to prescribe any additional qualification as a condition precedent to the right to vote, or prescribing a longer residence than that required by the Constitution, is unconstitutional and void. 20 C. J. 66; North Carolina v. Canady, 73 N. C. 198, 21 Am. R. 465; Wendover v. Tobin (Tex. Civ. App.) 261 S. W. 434; White v Multnomah County, 13 Ore. 317, 10 P. 484; Attorney General v. Detroit, 78 Mich. 545, 44 N. W. 388. The rule is stated in Ruling Case Law, vol. 9, p. 1034, in this language:

" 'It is a generally accepted rule that the enumeration in a state Constitution of the classes of citizens who shall be permitted to vote is to be taken as to all matters within the purview of the provisions as a complete and final test of the right to the exercise of that privilege and that the Legislature can neither take from nor add to the qualifications there set out unless the power to do so is expressly or by necessary implication conferred upon it by the Constitution itself.'

"We think that the constitutional provision (art. 3, sec. 1) was intended to be all-embracing; and this being true, any legislative act existing at the time of the adoption of the Constitution or subsequently enacted purporting to prescribe a longer residence as an additional qualification to a right to vote on the issuance of school bonds, is in conflict with the Constitution, and therefore void."

The same reasoning is applicable to a legislative act purporting to prescribe an additional qualification to a right to vote at a school district election by requiring the voter thereat to be a taxpayer. No other construction is warranted by reason of the fact that in section 27, art. 10, of the Constitution the term "qualified property taxpaying voters" is used. Had it been the intention of the makers of the Constitution to require the voters under the provisions of section 9, art. 10, supra, to be taxpaying voters, no doubt they would have used language to that effect. If the Legislature can lawfully provide that a voter at a school district election must be a taxpayer it can provide that a voter thereof must be a real estate taxpayer, and it can thereby deprive tenant farmers of the right to vote at school district meetings on the question of fixing the rate of levy for school district purposes.

There is nothing in section 9, art. 10, supra, or any statute of Oklahoma that requires an estimate for common school purposes to be approved by a majority of the voters of a school district as a condition to the exercising of the authority granted to a majority of the voters of the school district voting at an election held for that purpose to increase the annual rate of taxation for school purposes by an amount not to exceed ten mills on the dollar valuation. For the reasons stated, we must hold that the Legislature was without authority to impose a condition that an estimate of a school district shall be approved by a majority of the taxpaying voters of the school district.

Whether or not the Legislature can lawfully require an estimate of a school district to be approved by a majority of the voters of the school district voting at an election held for that purpose, is not an issue here, for we know of no provision of the statute requiring such approval. By the provisions of section 10339, supra, following the annual school meeting at which an election is held to determine the amount, if any, of increased levy for the school district, and on the first Tuesday in July, it is the duty of the school board to meet and make out a statement of the estimated needs of the school district for the current or ensuing

fiscal year. The Legislature has made no provision for the calling or holding of an election or a school meeting after that date, and had it been the intention of the Legislature to require an estimate so made by the school district board to be approved by the voters of the school district, provision would have been made for the holding of such an election.

Section 9696, supra, has been before this court for consideration in a number of cases, in many of which it appeared that the school district election was held by the voters of the district rather than by the taxpaying voters of the district. Among those we call attention to Prince, Co. Treas., v. St. Louis & S. F. Ry. Co., 110 Okla. 141, 237 P. 106, in which the certificate attached to the estimate filed with the excise board showed that the rate of levy had been "* * * approved by a majority of the voters of said district voting at said annual meeting, * * *" and in which the levy was sustained. We know of no decision as to the effect of the "taxpaying voter" provision thereof. As presented in this case, the issue as to the effect of section 9696, supra, is clear cut and it is necessary that that provision be construed. For the reasons stated, we hold that section 9696, supra, is unconstitutional and void.

The excise board contends that the levy authorized by the voters of the district was not necessary to meet the estimated needs thereof as certified to it by the directors of the district, and that the election, for that reason, was void. We do not agree with that contention. If the full levy voted was not needed, the excise board was only authorized to make a levy sufficient to meet the required needs. Section 9708, supra; St. Louis-S. F. Ry. Co. v. Thompson, Co. Treas., 35 Okla. 138, 128 P. 685; St. Louis-S. F. Ry. Co. v. Tate, Co. Treas., 35 Okla. 563, 130 P. 941. This rule was recognized by the trial court and its judgment only required the excise board to make a levy sufficient to meet the estimated and required needs of the district.

The excise board also claims that the election is void and violated the provisions of section 19, art. 10, of the Constitution, because the people voting at such election failed to distinctly define the purposes for which the revenue to be derived from the excess levy should be used. The voters of the school district voting at the election did not make the levy for taxes. They merely authorized the levy to be made. When the rate of levy is computed and fixed by the excise board, the items of the estimate are before it and the rate of levy is based on the several items of the estimate, which, when approved, are appropriations of funds for the several and specific purposes. A levy so made is not in violation of the provisions of section 19, art. 10, of the Constitution. Missouri, K. & T. Ry. Co. v. Prince, Co. Treas., supra.

We quote the language of this court in Tilley v. Overton, supra, as follows:

"At the regular meeting of the voters present voted upon and made the entire levy, and the entire levy of that district for the year involved has received the sanction of a majority of those persons voting thereon; and in so far as the tax below five mills was levied by a vote of the people, it was not done against any prohibition of the Constitution; and in so far as the tax levied exceeds five mills, it was made and levied by a vote of the people of the district in compliance with the mandate of the Constitution"

—and from Board of Education of Guthrie v. Excise Board of Logan County, supra, as follows:

"It is the duty of the proper authorities to raise by taxation for school purposes such sum as is deemed necessary by the board of education for the maintenance of its schools, and where this duty is plainly prescribed by statute, it is a ministerial duty and its performance may be compelled by mandamus. 26 Cyc. pages 162 and 287. In the instant case it appears that the discretion as to the amount of funds necessary for the proper maintenance of the separate schools is vested in the board of education, the district being an independent school district, and upon the board certifying the amount to be levied or appropriated to the excise board, it was the mandatory duty of the board to make the levy sufficient to take care of the budget as prepared by the board of education unless the levy would have exceeded the constitutional and statutory limitations as herein defined."

The same rule is applicable to common school districts. By the provisions of the territorial statute, section 6154, Wilson's Statutes 1903, supra the inhabitants of a school district qualified to vote at a school meeting were authorized to vote annually a tax on all the taxable property in the district at the annual school meeting for school purposes. By the provisions of section 2 of the Schedule of the Constitution, that territorial statute was extended and was controlling after the adoption of the Constitution. By the provisions of the 1915 act, section 9708, supra, and section 10339, supra, the same authority is vested in the

school district. By the provisions of section 9, art. 10, of the Constitution, the authority is granted to a majority of the voters of the school district voting at an election held for that purpose to increase the annual rate for school purposes by an amount not to exceed ten mills on the dollar valuation. Those provisions are definite and certain and the specific provisions thereof must control over the general provisions of section 9698, supra. Gardner v. School Dist. No. 87, Kay County, 34 Okla. 716, 126 P. 1018; Muskogee Times-Democrat v. Board of Com'rs of Muskogee County, 76 Okla. 188, 184 P. 591; Prince v. Wild Horse Drainage Dist. No. 1, 145 Okla. 185, 292 P. 42.

In the case at bar the excise board determined that the school district had employed too many teachers and in reducing the estimated needs of the district eliminated an item for salary of one of the teachers. It contends that it was authorized so to do by section 1, art. 2, ch. 34, Session Laws 1931. That act provides, in part:

"* * * but any contract entered into after the beginning of the fiscal year shall be binding upon the district unless canceled or annulled, upon the approval of an estimate by the excise board."

That act does not purport to confer authority upon the excise board to determine the number of teachers necessary to be employed by a school district. It simply provides that a contract between a teacher and a school district, unless canceled or annulled by proper authorities, shall be binding upon the school board and teacher upon approval by the excise board of an estimate made for the salary of the teachers.

We know of no statute authorizing the excise board to determine the number of teachers that may be employed by a school district. That question is for the determination of the school district, and the excise board may not usurp that function of the school district by refusing to approve an estimate therefor or by refusing to fix a rate of tax levy therefor where the same can be fixed within the constitutional and statutory limitations as to rates of tax levies for school district purposes and within the amount fixed by a majority of the voters of a school district voting at an election held for that purpose.

Certain taxpayers of the district requested that they be permitted to intervene in the action. Their request was denied by the trial court. This ruling is assigned as error. Assuming, without deciding, that those taxpayers were proper parties, they were not necessary parties, and, since no prejudice could have resulted in denying their request, we deem it unnecessary to determine whether their request might properly have been granted.

In School Dist. No. 4, Garfield County, v. Independent School District No. 4½, Garfield County, 153 Okla. 171, 4 P. (2d) 1031, this court held:

"An estimate made by a school district for the conduct of a school may not be reduced by the excise board, if the rate of levy authorized by the voters of the school district under the statutory and constitutional limitations is sufficient to produce the amount of the estimate made."

We think that that is a correct statement of the law applicable to the facts shown by the record in this case, and it is applied herein.

When the voters of a school district vote for an increased levy as authorized by the Constitution in the manner provided by sections 9708 and 10339, supra, and the school board of the school district certifies the result thereof to the county excise board, together with a financial statement and estimate of the needs of the district as provided by section 9708, supra, it is the duty of the excise board to make a levy in such an amount as will furnish revenue sufficient to meet the estimated needs of the district, but if the levy voted should be more than sufficient to produce the amount of money shown by the estimate to be necessary, it is the duty of the excise board to make the levy no more than is sufficient to produce, with other income, the amount of the estimate. In the language of this court, in Missouri, K. & T. Ry. Co. v. Prince, supra,

"The provisions of section 9708, in this respect, are in harmony with section 19, art. 10, of the Constitution. * * *"

As held by this court, in Board of Education of Guthrie v. Excise Board of Logan County, supra:

"Where a writ of mandamus is sought to enforce the performance of a statutory duty, which is plain and definite, the refusal to perform such statutory duty is sufficient to authorize the issuance of the writ."

We find no error in the judgment of the trial court, and that judgment is in all things affirmed.

RILEY and SWINDALL, JJ., concur. CULLISON, J., concurs in conclusion. McNEILL, J., concurs in the result and dissents as to that part of the opinion holding section 9696, C. O. S. 1921, unconstitutional

in toto. LESTER, C. J., CLARK, V. C. J. and HEFNER and KORNEGAY, JJ., dissent.

---

McNEILL, J. (dissenting). I concur in the result reached in the majority opinion in that the judgment of the trial court is affirmed, but I dissent to striking down section 9696, C. O. S. 1921, in toto, as being unconstitutional. In my opinion there is no occasion for nullifying this section of the statute which has been standing since 1917, because the Legislature provided therein that "the annual rate of levy of five (5) mills for school purposes may be increased by any school district by an amount not to exceed ten (10) mills on the dollar valuation on condition that a majority of the taxpaying voters thereof voting thereon shall vote for such additional levy, and by their majority vote approve an estimate to be submitted to the county excise board," on the ground that this section requires such voter to be a "taxpaying voter" in contravention to the qualification of a voter set forth in article 3 of the Constitution of Oklahoma. Section 9, art. 10, of the Constitution is not a grant of power to the school district, but is a limitation upon the Legislature and said district in the levying of taxes for such school district, and this section provides that this levy may be increased by any school district by an amount over the five-mill levy, not to exceed ten mills on the dollar valuation on condition that the majority of the voters thereof voting at an election vote for said increase.

Said section 9696 is the only section of our statute which permits the voters of a school district to vote for an additional levy and approve an estimate for current expenses to be submitted to the county excise board. If the single word "taxpaying" preceding the word "voter" in said section is eliminated, then this section of the statute does not conflict with section 9 of article 10 of the Constitution.

The majority opinion says:

"Whether or not the Legislature can lawfully require an estimate of a school district to be approved by a majority of the voters of the school district voting at an election held for that purpose is not an issue here for we know of no provision of the statute requiring such approval."

And in the sixth paragraph of the syllabus, it is said:

"There is nothing in the statutes of Oklahoma requiring an estimate of needs of the common school district to be approved by a majority of the voters of the school district."

There is no provision of the statutes of Oklahoma requiring the estimate of the school district to be approved by the majority of the voters of the school district, but section 9696, supra, gives such voters, but not taxpaying voters, the right to approve an estimate which, when done, in my opinion, is binding upon the excise board, and which right, to approve an estimate, the majority opinion denies to such qualified electors of such school district.

Section 9708 and section 10339, C. O. S. 1921, do not give such voters this right. It is my opinion that when a majority of the voters at a school election vote for an increased levy and by their majority vote approve the estimate for current expenses to be made to the county excise board in an amount equal to the sum derived from such increased levy, the same is binding and conclusive upon the excise board, and that said board under section 9698 is then without authority to reduce the same. In this case the certification was made that the increased levy was voted by a unanimous vote, and in my opinion that by such vote the voters at such election thereby approved the estimate which was afterwards made by the school district board to the county excise board. The majority opinion also says:

"By the provisions of section 10339, supra, following the annual school meeting at which an election is held to determine the amount, if any, of increased levy for the school district, and on the first Tuesday in July, it is the duty of the school board to meet and make out a statement of the estimated needs of the school district for the current or ensuing fiscal year. The Legislature has made no provision for the calling or the holding of an election or a school meeting after that date and had it been the intention of the Legislature to require an estimate so made by the school district board to be approved by the voters of the school district, provision would have been made for the holding of such an election."

The majority opinion ignores section 9707, C. O. S. 1921, which provides for an election for an increased levy to be called by the excise board, if such board is of the opinion that such increase is reasonable and necessary for the current expenses of the school district. The qualified electors of the school district are vitally concerned in the conduct of the school system in their municipality. If section 9696, supra, is held

unconstitutional in its entirety, such electors would be deprived of the right to vote on a final estimate for the current expenses of their school district. If the district school board fails to include in the estimate what might be reasonably necessary for the next ensuing fiscal year, then such electors must rely upon the excise board to call an election for an increased levy if in its opinion such excess is reasonably necessary for the current expenses of the municipality, and the excise board, if in its opinion such excess is not reasonably necessary, may refuse to issue a call for an election on said increased levy. The electors of such school district should not be denied this statutory right given to them under section 9696, supra.

The majority opinion conflicts and is repugnant to the opinion of City of Ardmore v. Excise Board of Carter County, 155 Okla. 126, 8 P. (2d) 2, wherein the court says:

"It is said that the inclusion in section 3 of the act (section 9696, C. O. S. 1921) of the provision that the excise board shall have no authority to reduce the estimate of a school district, by implication, is a grant of authority to the excise board to reduce the estimates of other taxpaying units. We do not agree with that contention. No confusion can arise therefrom when the distinction made in Thurston, County Treasurer, v. Caldwell, supra, is kept in mind. Under the rule stated therein and consistently followed since that time, the maintaining of a public school system is a matter in which the state has a sovereign interest. It is not a matter of purely local or municipal concern. Atchison, T. & S. F. Co. v. State, 28 Okla. 94, 113 P. 921, 40 L. R. A. (N. S.) 1. In the absence of the prohibition contained in section 9696, supra, the excise board as a state agency would have supervision over estimates for school district purposes, and, under the provisions of section 9698, supra, would have the authority to reduce the estimate therefor. The prohibition was included in section 9696, supra, to prevent the excise board from exercising the authority granted to it by section 9698, supra, to reduce estimates involving matters in which the state has a sovereign interest, and there is nothing in section 9696, supra, which even by inference authorizes the excise board to reduce estimates for matters of purely local or municipal concern, except as hereinbefore stated."

The construction placed upon said section 9696, supra, in that case is not reconcilable with the majority opinion in this case. In the case of the City of Ardmore, v. Excise Board of Carter County, supra, the court clearly states that the state has a sovereign interest in the public school system and by reason of this sovereign interest the excise board as a state agency has supervision over estimates for school purposes, and under the provisions of section 9698, C. O. S. 1921, would have authority to reduce the estimates except for the provisions contained in section 9696, supra.

It is my opinion that section 9696, supra, is valid in every respect except in so far as it attempts to provide that the voter must be a taxpayer.

KORNEGAY, J. (dissenting). I dissent from the views of the majority as expressed in the opinion rendered. As I view it, the decision practically strikes down the foundation of our tax collecting and our tax limiting laws. The doctrines of a generation are overturned and superseded. Plethoric in language, vigorous in tone, with sections of syllabus 13 in number, each positive in assertion, and each consistent with self, all animated by the spirit of the crusades, the opinion appears to me to be fittingly described as a magazine full of dynamite, located perilously near the tax limiting machinery provided in the year 1910 by the Legislature, improved from time to time, culminating in the law of 1931, creating the independent excise boards and the Tax Commission, no guard being placed around the magazine, left open for exploitation by those who are likely not to know its contents.

A reading of the former decisions of this court, referred to in the opinion, and discussing the meaning of section 9, art. 10, of the Constitution on the subject of limitation of taxation is most convincing to an unbiased mind, that the court, for a generation, has been committed to the doctrine that that section was not a grant of power to anybody, but was a limitation upon the power of the Legislature, beyond which the Legislature could not go and within which it could act, with a provision that even the Legislature could not be trusted at all times on taxation, and requiring that, if it desired to provide for more than five per cent. ad valorem tax for common school purposes, it would be required to provide machinery for the purpose of taking the sense of the voters of the district on the proposition, and that after the five per cent. ad valorem tax that the makers of the Constitution deemed sufficient to carry on a school, was exhausted, the necessity for more must be shown by

an act of the Legislature, and also by the consent of the voters of the district.

The source of legislative power herein involved, and of independent action by the Legislature, is a provision of the Constitution that defines the powers of the departments of government, dividing them into the executive department, the judicial department, and the legislative department. The Legislature, in 1917, provided the machinery that it deemed necessary to put into operation and effect its consent to an increase above the five per cent. limit fixed in the Constitution, and that provision is found in section 9696, C. O. S. 1921. Its constitutionality, as being in conflict with section 9, art. 10, apparently, for the first time, is now raised by this court.

The decision here declares that act to be void. Thereby the will of the Legislature is thwarted, and the action of the executive in approving the law is nullified, leaving no machinery for the taking of the sense of the voters on the proposition of an increase.

In statement the opinion of the court is startling. The effect will undoubtedly be revolutionary when fully appreciated. The guarantee of the Enabling Act is practically held for naught in the opinion, and the Constitution of the United States, with its guarantees, is unnoticed, but practically nullified so far as an Oklahoma taxpayer is concerned. The same result with reference to the republican form of government that is guaranteed to each state by the Constitution of the United States. The reference therein contained to the departments of state government is convincing that by a republican form of government, therein mentioned, is meant a government practically of three separate and distinct departments, such as our own Constitution provides. The duty, of course, of the Legislature is to legislate, and the duty of the executive is to approve the legislation, if to the executive it appears right and proper. The duty of this court is to sustain the legislation, unless there be found in the fundamental law, creating this court and creating the Legislature, and creating the executive department, some provision that unquestionably forbids the legislation. It would almost be a reflection upon accepted practice and court procedure to cite authorities to that effect. However, some of the authorities referred to in the majority opinion, though evidently the majority did not recognize all the statements therein contained, are explicit that before the court can strike down the action of a co-ordinate department of government, there shall be no reasonable doubt as to such action being inhibited by the Constitution.

By this decision this court has nullified the court rulings since statehood. It has destroyed beneficial legislation passed by the lawmaking authority for the purpose of carrying into effect the provisions of the Constitution, and securing to the people its benefits. At least, there can be said for the opinion, however, that it stands out as complete vindication of this court, as against an insinuation that it will not at all times claim its prerogatives under the Constitution. The effect of the decision, however, is that, after all the mists are cleared away and the sunlight is turned onto the scene of strife, this court stands out in the midst of the devastation of our school system, and the destruction of our governmental system, almost solitary in grandeur. It is almost reminiscent of the ancient monarch, who by virtue of his accomplishments looked upon his surroundings, monarch of all he surveyed, with none his right to dispute.

It appears to me that the legislative power, as applied to this case, in large measure is embodied in section 36, art. 5, and section 45 of the same article. Said section 36 is as follows:

"Sec. 36. To extend to all rightful subjects of legislation. The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever"

—and section 45 of article 5 is as follows:

"The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this Constitution."

A limitation upon that power in taxation matters is section 9, art. 10, which is as follows:

"Sec. 9. Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year 31½ mills on the dollar, to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills: Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more

than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

That section was put into the Constitution pursuant to a demand for a limitation upon the power of the Legislature to legislate on the subject of taxation. Most clearly the decisions cited and quoted from in the majority opinion so hold. Under them, in no event could the Legislature permit a levy by anybody of more than five mills for common school purposes, whether it be the voters or the school board, to whom the authority of handling the district's affairs was entrusted by legislative enactment.

At the same time, the Legislature itself was again limited; after it should decide that more than five mills was necessary. It could not allow any extra levy, except on the condition that a majority of the voters, voting at an election, vote for the increase. It could refuse to allow the district at all, under this section, in the exercise of legislative discretion, to levy the full five mills, and it could not allow a levy of more than five mills, except on the condition prescribed. To quote in full the statements made by the Judge in Tilley v. Overton, 29 Okla. 292, 116 P. 945, the parent case, extracts from which are taken in the majority opinion, would only burden unnecessarily legal shelves already groaning. Correct appears the deduction concerning it, made in the majority opinion, as follows:

"That the procedure for the making of a school district tax levy may be changed by the Legislature was held in Tilley v. Overton, Co. Treas., 29 Okla. 292, 116 P. 945, wherein it was held that the procedure to be followed was to be prescribed by the Legislature, and in McCreary v. Lee, 45 Okla. 201, 145 P. 777, wherein it was held that the Legislature was left entirely free to determine how school district elections should be held, the time and place and the manner of holding the same, and what should constitute a legal election."

The syllabus here is clear to the effect that this court now holds that the voters of a school district are made superior to the Legislature of the state. Until this time, starting from the enactment of the first excise board law, such a position has not been taken. Carried to its logical conclusion, un-

der this decision, we have an inner government, uncontrollable by the Legislature. Heretofore, the provisions of the Act of 1917 have not been thought of as violating section 9, art. 10, though it and kindred provisions have remained on the statute books for nearly a generation. One far more drastic provision is found in the original law, after revision and re-enactment, and publication in the Revised Laws of 1910. It is declared in express words in paragraph 5 of the syllabus that section 9696, C. O. S. 1921, is unconstitutional, as follows:

"5. Section 9696, C. O. S. 1921, violates the provisions of section 9, art. 10, of the Constitution of Oklahoma, and is ineffective and void."

Section 9696, C. O. S. 1921, is as follows:

"9696. Tax Rate—Levy. The annual rate of levy of five (5) mills for school purposes may be increased by any school district by an amount not to exceed ten (10) mills on the dollar valuation on condition that a majority of the taxpaying voters thereof voting thereon shall vote for such additional levy, and by their majority vote approve an estimate to be submitted to the county excise board. The election so held for such purpose shall be by yea and nay vote, and the additional levy, so made shall be certified to the county excise board along with said estimate. The excise board shall have no power or authority to reduce the levy, so voted, and made at the school district meeting, neither shall the said board have the authority to reduce the estimate, unless the rate of levy so voted, shall be insufficient to raise the amount thereof, in which case the board shall reduce and adjust the items of the estimate to an amount within the limits of the levy."

Section 6 of the syllabus is as follows:

"6. There is nothing in the statutes of Oklahoma requiring an estimate of needs of a common school district to be approved by a majority of the voters of the school district."

The statement therein contained is most clearly negatived by section 9696, quoted above, which plainly says, "and by the majority vote approve an estimate to be submitted to the county excise board."

Paragraph 8 of the syllabus is as follows:

"8. There is no authority in a county excise board to determine the number of teachers necessary to be employed by a school district, that authority being vested in the school district, and a county excise board is without authority of law to reduce an estimate of a school district for salaries of teachers though, in the judgment of the excise board, the number of teachers employed by the district is in excess of its needs."

However, that is merely a deduction that is made by the author of the opinion, and is not the result of an analysis of the enactments.

Paragraph 12 of the syllabus is as follows:

"12. An estimate made by a common school district for the conduct of a school may not be reduced by the excise board, if the rate of levy authorized by the voters of the district under the statutory and constitutional limitations is sufficient to produce the amount of the estimate made."

As disclosed by the record in this case, the excise board were hauled before the judge of the district court, and the prerogative writ of mandamus was applied to them, in the face of the fact that the Legislature had conferred upon them the right to exercise powers with reference to approving estimates that called for discretion of the highest order. The term "mandamus" is a high sounding phrase, and is ordinarily defined as a prerogative writ. However, we have not ordinarily considered that the discretion of any officer, when the exercise of it was required of him by law, is controllable by mandamus, but of late the docket of this court has been filled with mandamus and prohibition, to such an extent that there is not very much room for the exercise of its appellate power.

In some decided cases, evidently the provisions of section 9708 have been lost sight of, notably by the court below. Section 9708, C. O. S. 1921, referred to in the opinion as justifying the decision, is as follows:

"9708. Vote on Excess Levy—Report and Estimate. Section 7381, Revised Laws of Oklahoma, 1910, is hereby amended (by adding section 7381a) to read as follows:

"'7381a. Provided, further, that the school electors of any school district shall vote at the annual meeting (or election) as to whether an excess levy shall be levied for the next ensuing year, and the amount of such excess levy. If said excess levy shall receive a majority vote of those voting at said annual meeting (or election) then it shall be the duty of the school district board, when making the estimate for the next ensuing fiscal year, to attach to said estimate a certificate of the vote had at the annual meeting (or election) on the question of making such excess levy for the next ensuing fiscal year and if said excess levy carried, then the county excise board, if an excess levy is required for the ensuing fiscal year to create a fund equal to the amount of the approved estimate, shall levy said additional levy not to exceed the amount voted by the people at the annual meeting (or election) or so much of the amount of the estimate approved by the county excise board.'"

Section 7381, referred to, is section 9707, C. O. S. 1921, as follows:

"9707. Election Necessary for Increased Levy. If any estimate certified to the excise board for the current expenses of any county, city, incorporated town, township or school district shall exceed the limits prescribed by the first section of this article, and the excise board shall be of the opinion that such excess is reasonably necessary for the current expenses of the municipality for which the same is prepared, they shall enter such fact upon the record of their proceedings and shall give notice by publication in one issue of some newspaper printed in the county that a special election will be held in the county, city, town, township or school district, as the case may be, on the second Tuesday after the first Monday in August next thereafter for the purpose of submitting to the qualified electors of such county, city, town, township or school district, the question of making such increased levy. Such election shall be held under the general election laws of the state and in each election held under the provisions of this act (article), the amount of each proposed levy shall be printed upon the ballot, with the words, 'For the levy' and 'Against the levy,' to the left of which shall be printed a square in which the elector shall stamp to indicate his choice: Provided, that in school districts not in cities the election shall be conducted as provided by law for such elections in school districts."

The election under this section is called by the excise board, for the excess levy. This amendment was made in 1915. Section 9696 was enacted in 1917. It changed the method prescribed for holding the election on the result of which depended the grant of legislative consent to the increase. However, if one recognizes that the section is composed of all of its parts, it is very clear that under section 9708, the estimate there called for was to be made by the district board and certified to the excise board, and if the excess levy also received a majority vote that still it was left to the excise board to approve so much of the amount of the estimate as it saw fit. The Legislature provided for the excise board to take the judgment of the voters upon the subject, not as an imperative guide, but as persuasive, and the right was left in the excise board to reduce but not to increase the estimate, and to levy accordingly, but the board could not increase the rate allowed.

The slightest inspection of the statutes and the annotations thereto, and among others, section 9710, that formed part of the 1915

law, calls attention to the case of McCreary v. Lee, 45 Okla. 201, 145 P. 777, cited under it, which was a case where the extension on the tax roll of a one-mill levy was enjoined in the lower court, and the higher court sustained the injunction. At page 205 in 45 Okla., speaking through Chief Justice Kane, this court says:

"* * * As we are of the opinion that 30 per cent. of the total number of legal voters living in such school district shall participate therein, the only other question necessary to decide is the constitutionality of section 7383, supra. The part of the Constitution which counsel contends nullifies this section of the statute is the proviso of section 9, art. 10, which reads:

" 'Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase.'

"Section 7383, supra, and the other sections of the article of which it forms a part, were enacted for the purpose of vitalizing the foregoing constitutional provision. In our opinion, there is nothing in the act of the Legislature repugnant to the constitutional provision. The Constitution simply provides that, at the election provided for by the Legislature for authorizing an additional levy for school purposes, a majority must vote in favor of the levy. As the constitutional provision is not self-executing, it was the duty of the Legislature to vitalize it, and in so doing it was left entirely free to determine how the election should be held, the time and place, and the manner of holding the same and what shall be held to constitute a legal election. People v. Czarnecki, 256 Ill. 320, 100 N. E. 283; Bell v. City of Americus, 79 Ga. 152, 3 S. E. 612. In the latter case it was said:

" 'The Georgia Constitution provides that no bonded indebtedness for the establishment of certain improvements shall be incurred by any municipal corporation without the assent of two-thirds of the qualified voters thereof at an election for that purpose. Held, * * * that, in estimating whether or not two-thirds of the voters had voted in favor of such indebtedness, the judges of election shall base their calculation on the votes cast at the last previous election, is constitutional.'

"In our judgment, the Oklahoma statute under discussion is of somewhat similar import. Instead of making the legality of the election turn upon the votes cast at the last previous election, as in Georgia, it provides that the election provided for the purpose of vitalizing the constitutional provision 'shall be held to be a legal election when 30 per cent. of the total number of the legal electors shall participate therein."

"For the reasons stated the judgment of the court below is affirmed."

It is very evident, if one will acquaint himself with the history of the excise board law, that section 9696 was passed for the purpose of conferring upon the people, by the Legislature, of more power in school district matters than they exercised under section 9708.

Examining section 7380, Rev. L. 1910, which is the revision of the act of 1910, we find that the power was conferred upon the excise board to revise and correct any estimate, the section being as follows:

"7380. Duties of Board—Tax Levies. The excise board shall meet at the county seat on the last Saturday of July of each year for the purpose of examining the estimates of expenses for the county and for each city, town, board of education, township and school district therein. Their meeting shall be public and they shall keep a record of their proceedings. They shall have power to revise and correct any estimate certified to them, where the amount thereof is in excess of the just and reasonable needs of the municipality for which the same is made. When they shall have approved each estimate, if the same shall be within the limits for current expenses, provided by the first section of this article, and shall have ascertained the assessed valuation of property taxed ad valorem in the county, and in each municipal subdivision thereof, and shall have ascertained the probable income of the county and of each municipal subdivision thereof from all sources other than ad valorem taxation, they shall thereupon make the levy therefor, adding thereto the amount ascertained to be necessary for a sinking fund which, with the money already in such fund, shall be sufficient to pay, at maturity, all bonded indebtedness of such municipality, and for the interest coupons falling due on the outstanding bonds of such municipality; to the total amount so ascertained to be necessary for current expenses, sinking fund and interest coupons shall be added ten per cent. for delinquent taxes. The levies so made by them shall be certified to the county clerk, who shall extend the same upon the tax roll."

Section 7383, R. L. 1910, requires the number of votes to be 30 per cent. in school districts, and this section is considered by Justice Kane in the opinion referred to above, which is cited under section 9710, C. O. S. 1921.

The statute law of 1915 made some changes in the law as found in the revision. Under the law as originally passed, and under section 7380, R. L. 1910, it is clear that the power was conferred upon the excise board to revise and correct any estimate where in

its judgment the estimate was in excess of the just and reasonable needs of the municipality. Most clearly the excise board was permitted to pass upon those necessities.

The law of 1917 changed the law embodied in section 7380, referred to above, and defined the power of the excise boards. Section 9694, C. O. S. 1921, recreates the board. Section 9695, as now found in C. O. S. 1921, is a part of the act of 1917, and so are sections 9696 and 9698, and the portion of the section conferring upon excise boards their power as of that and subsequent dates, appears to be as follows:

"9698. Excise Boards to Meet—Where and When. The excise board shall meet at the county seat on the last Saturday of July, and may adjourn from day to day and time to time thereafter, for the purpose of examining the financial statements for the previous fiscal year as submitted by the county and the several cities, towns, townships, and school districts, and ascertaining the true fiscal condition of each thereof at the close of such year; and for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year as certified by each of said municipalities, and determining the items and amounts for which appropriations shall be made for such year, detailed as to each officer, board or department. The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing, or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require. All revisions and corrections shall be as to specific items of the estimate and in no event shall any item or items of the estimate for current expense purposes be increased, or any item added thereto, until such proposed increase or additional item shall have been advertised and published by the excise board in some newspaper of general circulation in the county, in one issue, if published in a weekly paper, and two consecutive issues, if published in a daily paper. * * * When the excise board shall have examined, revised, and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary."

There is more to the section, intensifying the necessity for itemizing. Paragraph "e" of that section is the one covering school districts, and is as follows:

"(e) The appropriation for school districts shall be itemized so as to show in separate items the amount of funds appropriated; for salaries of teachers; for light, fuel, water, supplies and rent; for library and school apparatus; for the construction of buildings, improvements, repairs and purchase of building sites, if any; for furniture and fixtures; for maintenance of buildings and ground, including janitor service; for such other expenditures as may be necessary and authorized by law, but not herein enumerated."

Section 9696, C. O. S. 1921, that is here declared unconstitutional, forms part of the same act, and evidently was passed for the purpose of altering the provisions of 9708, under which the excise board could reject the advice of the people and make the amount of the estimate for taxation purposes, according to the judgment of the excise board, using the vote merely as advisory. By the law enacted in 1917, this power of changing the estimate could be taken away from the excise board, provided the law was complied with. One of the conditions prescribed was "that a majority of the taxpaying voters thereof, voting thereon, shall vote for such additional levy," and another that the estimate should also be approved by such votes.

By this section the Legislature provided that, in the election for the purpose of increasing the amount beyond five mills, a majority of the taxpaying voters of the school district should vote for the additional levy, a thing that most clearly was within the power of the Legislature to prescribe, under the accepted conception of the law from its infancy, which time and again had been passed upon by the Supreme Court in cases perhaps as strong, if not stronger, than the McCreary v. Lee Case, cited above. Further provision is that the estimate would have to be approved by such majority vote. Another provision, that the election should be by yea and nay vote, and that the additional levy, "so made, should be certified to the county excise board along with said estimate." Limitation was there placed upon the unlimited discretion of the excise board, as theretofore allowed, by prescribing that they should have no power to reduce the levy that was made in this manner, and should have no power to reduce the estimate unless the levy voted would not make the amount of the estimate. In that case, the board was required to reduce the estimate and adjust the items. These were the conditions on which the Legislature's consent to the increase depended.

No useful purpose, as it appears to the writer, could be served by giving a history of the old statutes in territorial days on the subject, as an entirely new order was in-

troduced by the Constitution and by the excise board law, and acting under the Constitution of the state, the Legislature recognized the limitation put upon its power in taxation matters, and carrying out the duty imposed upon it by the Constitution, provided for the excise board to be a complete check upon the officials in making estimates.

In school districts, however, by the law of 1917, which this court now declares to be unconstitutional for the first time, was a limit placed upon the power of the excise board to cut down estimates. Other sections of the act prescribe that everything should be done by items, and the estimate made by items, and that the excise board could strike out items and could modify items, with always the proviso that items, after they pass the five per cent. limit, could not be increased by the excise board without the consent of the voters being given.

It occurs to the writer that the opinion in this case, in destroying, under the theory of constitutional limitation, section 9696, has destroyed the very foundation of the judgment itself, as applied to the facts before it. It would be idle to go into discussion, in view of the decisions that are cited, as to whether education was a matter of statewide concern, or purely a local matter. It is sufficient to say upon the point, that the Legislature has full power to regulate taxation for educational purposes, subject to the limitations imposed by the Constitution. It cannot increase beyond the prescribed constitutional limits, but its judgment in the matter is what the Constitution requires us to follow in this mandamus case. This court is as much restrained by the Constitution as the lowliest officer in the state, each performing the functions in his sphere prescribed.

Language could not be plainer than the language of this court in Tilley v. Overton, 29 Okla. 292, 116 P. 945, referred to in the majority opinion, and in the McCreary v. Lee Case, cited above. Both cases most clearly affirm that, as applied to taxation for school purposes, the Legislature has full discretion to provide the method of carrying out the provisions of the Constitution on the subject and the machinery for so doing, and that the limitation prescribed by section 9, art. 10, is that the Legislature cannot permit a higher rate than therein named.

The discretion of the Legislature did not reach the full limit permitted by the Constitution. It saw fit to control the matter by the creation of an excise board, a thing that most clearly was within its power, if it was a Legislature at all, which was covered by the general grant that has heretofore been referred to in the beginning of this opinion. To undertake to distinguish, and to say, that with the decisions that we have acquiesced in, and acted on for years, everything is now wrong, and that this was a grant of power to the voters as distinguished from a limitation of power of the Legislature savors more of a perversion and a play upon words than of a fair interpretation of ordinary language. See School Dist. No. 4 v. Independent Dist. No. 4½, 153 Okla. 171, 4 P. (2d) 1031, holding it not a grant of power, at bottom of page cited in the majority opinion.

Most clearly the best support that the "mandamus" has for a foundation, has arbitrarily been stricken down, as violative of the Constitution, though it is the only statute on which to rely for a limitation of the superintending control, as defined and conferred in general and special terms on the excise board. The next step, in all likelihood, will be to use expressions contained in this opinion for a sweeping declaration that no municipality can be controlled in expenditures by the Legislature at all. The gentle breezes that sometimes are created by the magician's wand may turn to a cyclone or a hurricane, that sweeps away the magician himself. In a desire to cover the whole territory at once, we sometimes lose sight of those things that are next to us.

Apparently there are expressions in this opinion that can be used to negative the power of the excise boards to regulate city expenses. It strikes the writer that there will be time enough to cross that bridge when we get to it. It is not deemed necessary to discuss whether the Judges were using general or special language in the various cases, as it is clear that until now it has never been thought that language in the Constitution, addressed to the Legislature and limiting its power to apply a greater rate than five mills, except on condition, would fix it so the Legislature could not act at all on the extra allowance, withhold or allow, and would confer a power by express grant, that would create an independent republic, as it were, within the domains of the state, limited, it is true, by the confines of a school district and the desires of a changing population.

The opinion in this case is somewhat apologetic for overruling the Constitution and previous decisions of the court, and

denying the Legislature the power to do those things entrusted to it, under our form of government, by the positive provisions of the Constitution. As applied to the situation and the facts in this case, it is most deplorable. The technicalities of the law cannot restore a devastated home, and the issuance of prerogative writs in the long run may be the undoing of those who issue them.

The record in this case shows that the excise board, evidently believing that it was put there for a purpose, cut down the estimate about $1,500, and only allowed pay for two teachers instead of three. The school teachers at once entered the lists, but the case seems to have been fought out with the school district on one side and the excise board on the other. As disclos:d by the petition a copy of which can be found on page 3 of the record when the suit started it was a blanket petition and the attorney who brought it by reason of certain allegations therein evidently believed that section 9696 now declared unconstitutional by this court, was in full force and vigor, as the allegation is contained in the petition that "a majority of the taxpaying voters and a majority of the voters, voting thereat, voted to make a levy of ten mills." However, the petition is silent as to the other requirements of the section, which provided for that same authority to approve the estimate and to vote for it also. These allegations, apparently, were lost sight of by the court below and ignored by this court. Evidently it was in the mind of the lawyer drafting the petition that the itemized estimate, that is so thoroughly emphasized in all this legislation, was not mentioned in the section referred to, or that the voters were not required to approve it, but its language so requiring is too plain for contention.

Some reliance is put upon the proposition that a teacher's contract is superior to the taxpayers' sanction. Special emphasis was stressed in the answer that the estimate was not certified or attested as required by law, and the answer contained a demurrer also, and it is alleged therein that the reduction of the levies and estimates was neither unlawful or arbitrary, and the allegation is made that they were unreasonable and disproportionate and the proceeding was an attempt on the part of the plaintiffs to unduly burden the taxpayers of the district. There was a further allegation that some of the items of reduction contained in the findings of the excise board were made by agreement between the plaintiff and the excise board.

Further reliance was placed upon the failure to hold a legal election, and specific charges were made that no notice was posted of the election, and the vote taken at the election was not by yea and nay vote, and that the budget was not specially voted on.

The record shows an attempt by the taxpayers to intervene, but they were not allowed to do so. The evidence taken on behalf of plaintiffs below was an introduction of the financial statement and estimated needs of the district, certified to the excise board, and the court overruled a demurrer to the evidence of the plaintiff. The certificate to the estimate relied on is as follows:

"State of Oklahoma, County of Marshall, ss.

"We, the undersigned, duly elected, qualified and acting officers of the school district No. 34, county of Marshall, state of Oklahoma, do hereby certify that the foregoing statement of the fiscal condition is true and correct; that the amounts enumerated in the statement of probable needs are reasonably necessary in the proper conduct of the affairs of said school district; that the statement of estimated income from sources other than ad valorem taxes is not in excess of the actual collections from such sources during the previous fiscal year. We also certify that an additional levy of 10 mills over and above the 5 mills provided by law was authorized at an election held for that purpose on last Tuesday in March, 1931, by a majority of those voting at said election; that the result of said election was: For the increase of levy, 27; against the increase of levy, 0; majority, 27.

"We do further certify that pursuant to section 10, art. 10, of the Constitution of Oklahoma, an additional levy of none mills was authorized by a majority of the qualified voters of said school district, for the purpose of erecting public buildings therein, at an election held on _____ 1931, the result whereof was: For the levy _____; against the levy,____; qualified voters____; majority ____.

"We further certify that said statements and estimates were prepared and made at a meeting held on the first Monday in July, 1931.

"C. D. Green, Director.
"J. L. Barentine, Member.
"(Signed) R. E. Carney, Clerk.

"Subscribed and sworn to before me this 25th day of July, 1931. Wm. C. Butler, Co. Clerk."

The evidence on behalf of the defendant showed that the average attendance in the school was 34.22 students. The testimony

of one of the members of the excise board, found on page 32 of the record, is as follows:

"A. My name is A. F. Stanley; I live in Madill, and I am a member of the excise board. Q. Mr. Stanley, why was the estimated needs of school district No. 34 reduced? A. The reason that they have only about 35 students out there and they have three teachers employed and we felt that the amount they requested in their estimated needs was wholly out of proportion to the amount they should have. It is nearly four times as much per student as some other districts are allowed, and we felt considering the price of cotton, corn, and other farm commodities that such spending as this should be stopped. Q. Mr. Stanley, was it a personal matter against this school district? A. No, indeed, we were simply trying to save the taxpayers some money, and we did our best to equalize things as much as possible."

He was not cross-examined, and thereupon the counsel for the excise board, Mr. Little, and the court discussed the matter as follows:

"By Mr. Little: If the court pleases, the defendants set forth in their answer that these elections are illegal and they further plead that the amounts requested in the estimated needs are wholly disproportionate considering the price above the commodities and are wholly disproportionate considering the amount of services rendered the taxpayers and the rest of our case is on this point. By the Court: I do not think that has anything to do with this lawsuit; the question is whether or not the excise board has any discretion in lowering these estimates. I have always been of the opinion that they did have. By Mr. Little: If the court pleases, we should like to try this lawsuit on our theory of the case, and defendants think that as an excise board and especially as taxpayers in the case that if they can prove that the estimated needs are entirely disproportionate and excessive then that the court should itself, whether the excise board has the authority or not, reduce the estimated needs, which, of course, would reduce the levy. By the Court: The court does not think that has a thing in the world to do with this lawsuit, and the court is not going to take its time to go into it. By Mr. Little: If the court pleases, I should like to make an offer of proof on this point, both as to the defendants in the case and as to J. P. Reirdon and Norborne Taliaferro, movants to intervene. By the Court: That is all unnecessary and will be denied. By Mr. Little: Let the records show that the defendants in this case and movants to intervene, J. P. Reirdon and Norborne Taliaferro, except to the ruling of the court. By the Court: Exceptions are allowed. By Mr. Little: Defendants rest."

The allegation as to the taxpaying voters having voted the levy is not sustained by the certificate. The court took the matter under advisement, and the journal entry of judgment recites the various proceedings down to the date of the judgment and the following appears in the journal entry:

"The court then takes the case under advisement until this the 22nd day of December, 1931, the same being one of the regular judicial days of the December, 1931, term of this court, and now, being advised in the premises and after carefully reviewing said cause, the court doth find for the plaintiff, school district No. 34, as shown by the findings of fact and conclusions of law filed herein, reference to which is hereby made the same as if copied in full herein, and to which action and decisions of the court the defendants then and there except and their exceptions are allowed, and in open court said defendants give notice of appeal to the Supreme Court of the state of Oklahoma.

"It is, therefore, ordered, adjudged, and decreed by the court that said defendants be and they are hereby required to approve the budget and estimate of needs of said school district No. 34 and to approve the various items therein contained including the items for salaries of teachers, and to levy a tax sufficient to raise the same, which when added to the estimate in said school district of income from other sources than ad valorem taxation will equal the amount requested by such budget and estimate of needs for all of which the clerk of this court is directed to issue a peremptory writ of mandamus, to which action of the court the defendants except and their exceptions are allowed, and said defendants in open court give notice of appeal to the Supreme Court of the state of Oklahoma.

"Porter Newman, Dist. Judge."

The findings of fact therein referred to do not appear in the record, so that the finding is a general finding, unless the statements of the court in the discussion with the attorney are the findings referred to. It appears from the record that the expenses of each pupil, as demanded, were in the neighborhood of $120 a year, and three teachers were to be employed, and one of those teachers was by the excise board found to be excessive, and about one-third of the estimate was pared. One can scarcely believe that for any purpose it is good policy or good law to take from the taxpayers that which is not necessary.

The position of the taxpayer in the lower court, as this record shows, was rather trying. The same way in this court. It seems to me that those who are drawing salaries sometimes fail to appreciate the condition of those who are expected to furnish the wherewithal to pay the salary. In the early

history of the human race, the Israelites were in bondage in Egypt. It is related that straw was one of the essential things to make brick, but the Egyptian task-master required the Israelities to make the brick without furnishing the straw. No master would work a beast of burden and expect the beast to carry him, unless he himself did something for the beast.

The country whence this suit comes, according to the newspaper reports, has been on the Red Cross list for some time. Probably its only resource, as stated by one of the witnesses in this case, that would bring in the dollar, is cotton, perhaps some corn, but probably not much in late years of either. According to the press reports appearing in practically every newspaper at this time, Oklahoma's taxation exaction during the past year has been greater than the entire value of all its oil, all its cotton, and all its wheat products combined. When these things are taken from the revenue producing list of what the Oklahoman has, the amount that is left is scarcely appreciable, when there are so many mouths to feed, so many feet to shoe, and so many backs to cover, not to mention shelter from the summer's heat and winter's blast. It is thinking time.

According to this record, three teachers were demanded in a common school for an average attendance of less than 35 pupils. The writer of this dissent has spent one-third of his active life in the school room, about three-fourths of the time as student, about one-fourth as teacher. Instead of $120 during his time being required to furnish tuition to a pupil in the lower grade, from $15 to $20 was the usual cost. The purchasing power, however, of a dollar or the necessities of life during those times was a little less, and sometimes far less, than it is now.

Each newspaper that one picks up now is urging economy and curtailment of public expenditure. It may be, though, that the burden carrier has had so little for himself during the long Saturnalia of salary reception that it will make little difference with him, as he has either passed on or now hears the death rattle. School room education has been a shibboleth for a generation, and as the price has grown higher, the cry has grown greater, until now one is almost reminded of the tower of Babel, that was built so high that there came a confusion of tongues. Nothwithstanding its desirability, its elevating influence, its soul improving faculties, it must necessarily be based on the home, for without that there is little left that is worth while.

So great has been the taxation visited upon real estate and homes, not only in Oklahoma but elsewhere, that the greatest agricultural depression, probably in the history of the world, is on now. A Pharoah, whose successor commanded the Israelities to make the brick, had a dream. He did not understand, as everything was going along fine for him, but an Israelite interpreted the dream after his magician failed. He dreamed of the seven lean kine and of the seven fat kine. The lean kine came up out of the Nile and ate up the fat kine. If we look about us now in Oklahoma and elsewhere, the lowing of the kine has almost ceased, and Dobbin is gone, and it is the "machine" age, and in the language of the baseball diamond. "nobody walks." The coach that years ago belonged to the favored one, and drawn by a span of horses, has now been replaced by a different coach, one being on the highway and the other the chief architect in the building of a sport palace with gilded dome. The act of reaching the goal by a forward pass or by bucking the line is heroic in contemplation and creates great enthusiasm by day but this thrill loses some of its force when, at 10 p. m., "Pin Em Down Andy" contemplates going on the mat with "Bullneck Mooseface."

The views of the court appear to be formulated rather by a process of extraction of isolated expressions, gathered here and there from arguments put forth, in discussions had in court opinions, rather than by close inspection and analysis of statutes.

The section that is declared to be unconstitutional has never been questioned before in that way under section 9, article 10. It is as plain as plain can be that, viewing in entirety the cited decisions of this court, running from the time the tax law was made in 1910 by the Legislature until this evolution, that we now have before us, of the unconstitutionality of the section, was pronounced, that no one questioned the statute's authenticity. Heretofore no one appears to have thought that the Legislature was forbidden by constitutional law to provide safeguards with reference to voting school levies. The language of the Constitution is plain; the decisions are equally so, which hold that the language employed by the Constitution makers, instead of conferring power upon a group of voters to require a ten-mill levy, limited the power of the Legislature so that even it could not allow more, unless the voters consented in the manner by the Legislature fixed.

The interpretation by the courts in the very decisions cited leaves no room for

282

caviling, no place for contention. As well might one argue that the other provision allowing the county to levy two mills extra made the county an independent republic also, and that it, of its own volition without sanction of the Legislature, could levy two mills extra, and use it as it might think well.

There does not appear to the writer any language in the cases that were relied upon for the position now assumed by this court with reference to section 9696 from which a legitimate inference could be drawn that the writers of the opinion entertained the view that the voters of the district were a self-governing body with power to prescribe their functions and put themselves into legal operation. If we had a case of some taxpayer of the district complaining that the excise board had allowed more than five mills without the consent of the voters, there might be a place of inquiry to see whether or not the allowance was legal by reason of nonparticipation of all classes of voters, because the Legislature prescribed that only the taxpayers should vote, and prescribed how many should participate in the election, but the case here is the opposite. The school officials are complaining of too little being allowed by the excise board. The very fire that is built by the court here in declaring section 9696 unconstitutional destroys the only bridge that was in existence over which the excess levy may be reached without consent of the excise board. Without this there is no limitation whatever upon the power of the excise board to lower the levy, and to lower the estimate. Section 9708 referred to here clearly gives such power, as well as the sweeping provisions in section 9698, allowing changes "by striking items," "increasing or decreasing items." It is hard to see how language could be plainer.

An extract is taken from M. K. & T. Ry. Co. v. Prince, 133 Okla. 228, 271 P. 253. The first paragraph of the syllabus of that opinion affirms that the constitutionality of the act was not raised below, and would not be considered by the court. It was an action to recover taxes for the year 1926 paid under protest. It was an opinion by Commissioner Diffendaffer. It appears from an inspection of the recited record in that case that a resolution was passed by the voters allowing the school district authorities to certify an excess levy over five mills, in any amount not exceeding ten, that would be needed to raise the necessary fund, and that the case of Prince, Co. Treas., v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 P. 106, would have controlled it, so as to invalidate it, but that they had certified that

the number of mills voted was positive, and that the excise board had allowed four mills more than the five mills. The court cut the levy to three mills, and the one who prepared the opinion said this was all right. Contention was made that section 9708 was enacted in violation of the limitation with reference to revising a law by reference to its title, and the rule applied in this court is set out about declaring an act of the Legislature unconstitutional, as follows:

"A court will never declare an act of legislation passed with all the forms and solemnities requisite to give it the force of law, unconstitutional and void, unless the nullity and invalidity of the act are placed in its judgment beyond a reasonable doubt."

The pity of it is that after citing the case, the rule is most flagrantly violated here in declaring section 9696 unconstitutional. The sentence on the subject of the duty of making the levy has no subject, but the balance of the opinion after this extract tends to give color to what was in the mind of the one who prepared that opinion, and it is as follows:

"* * * But if no excess levy be voted at the annual meeting, if the estimate certified to the excise board shall call for an amount of money required to be raised by ad valorem tax in excess of the 5 mills, **if such estimate be approved by the excise board,** then a special election may be called by the excise board, and the question submitted under the provision of section 9707. Either section may be complied with independent of the other, and neither is in conflict with the other." (Emphasis ours.)

It is stated in the present opinion of the court that the court held no conflict between 9708 and 9696. The language of the court in dealing with the subject is as follows:

"It is further contended that, though section 9708, C. O. S. 1921, be constitutional, said section was repealed by the enactment of section 9696, C. O. S. 1921, a part of the Act of March 21, 1917. The claim is that, section 9696 being a later enactment on the same question, and repugnant to and in conflict with section 9708, said later section is repealed by implication. The only conflict pointed out is that section 9696, supra, requires the estimate to be approved by the voters, which is not required by section 9708, and prohibits the excise board from passing on or approving the estimate, which is not done by section 9708.

"If section 9708 is repealed by section 9696, for the reasons pointed out, the same would apply to section 9707, which would leave the school district without any law providing a time or manner of holding an election for the purpose of voting an excess levy. It is conceded that repeal by implication is not favored; and we are of the

opinion that section 9696 does not repeal section 9708, though some of its provisions are in conflict therewith. It will be noticed that section 9696, supra, does provide that the annual rate of levy of 5 mills for school purposes may be increased by any school district by an amount not exceeding 10 mills on the dollar valuation, on condition that a majority of the taxpaying voters thereof, voting thereon, shall vote for such additional levy, and by their majority vote approve an estimate to be submitted to the county excise board.

"It is shown in the agreed statement of facts that the certificate attached to the estimate submitted to the excise board certifies that the statement of estimated needs for the ensuing year was duly approved by a majority of voters of said district voting at said annual meeting. The only manner in which the truthfulness of this certificate is questioned is by a stipulation in the record that the estimate approved by the voters was not in the same form in which it was when filed with the excise board. There is no contention that there was any difference in substance, and no showing that an estimate was not in fact approved by the voters. The record does disclose that no election was held after the estimate was filed with the excise board. We think that if this provision of section 9696 is binding, the record discloses a compliance therewith."

Again, the court goes on to say:

"The further contention is made that section 9708, supra, was repealed by implication by section 9696, in that there is conflict between the two, in that section 9696 provides that the excise board shall have no power or authority to reduce the levy when once voted, while section 9708 provides that the excise board, if an excess levy be required, shall levy such additional levy, not in excess of the amount voted, or so much thereof as shall be required to raise the amount of the estimate approved by the excise board. We think that part of section 9696 which attempts to prohibit the excise board from reducing the amount of levy voted is in conflict with section 19, art. 10, of the Constitution, which provides:

"'Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.'

"In St. L. & S. F. Ry. Co. v. Tate, 35 Okla. 563, 130 P. 941. it was held that the estimate of expenses is required to be made in order to show the purpose for which the tax was levied. It was there held that any tax levied in excess of the amount shown to be necessary by the estimate was illegal as to such excess under section 19, art. 10,

of the Constitution. So that it would appear that if the levy voted should be more than sufficient to produce the amount of money shown by the estimate to be necessary, it would be the duty of the excise board to make the levy no more than sufficient to produce, with other income, the amount of the estimate, regardless of the provisions of section 9696, and although the two sections may be in conflict in this particular, the provisions of section 9708 are the more reasonable, and are such as to allow the excise board in making the levy to bring the same within the Constitution, both as to the amount of the levy and the specification of the purpose for which the tax is levied, while section 9696, if followed in certain cases. might compel the excise board to make a levy which would in part be illegal. The provisions of section 9708, in this respect, are in harmony with section 19, art. 10, of the Constitution. and must prevail over section 9696, if any conflict there be."

It thus appears from the language of the opinion relied upon here that the reason now assigned for holding section 9696 unconstitutional was not considered a very good reason at that time, and that the case of St. L. & S. F. Ry. Co. v. Tate, 35 Okla. 563. 130 P. 941, giving the reason for an estimate of expenses, would here enter and require that the estimate be submitted to the voters. The converse of the proposition, in some respects, that we have here was involved in those cases. The man who had paid after the levy and collection was suing to undo the action of the excise board. Here the action is that of one wanting to get the money by a levy and collection to be made, suing to compel the excise board to do what it was unwilling to do, viz., compel the taxpayer to produce. It is very clear to any one who will take the trouble to think that the Legislature by the latter act was seeking to allow the people to resort to a proceeding that would limit the power of the excise board to cut the estimate under section 9708, when properly made and approved by the voters, as prescribed.

To hold 9696 unconstitutional, it seems to the writer, would be likened to the character, that is portrayed in a play, who made a machine so exquisite and so complicated that when the design was lost it kept running until it consumed itself, and in the resulting fire consumed the maker.

The case of Vogel et al. v. Steelman et al., 53 Okla. 557, 157 P. 280, is referred to in the majority opinion. An inspection of the record in that case shows that the excise boards were increasing instead of decreasing, as in this case, and what is there said would have very little bearing upon the

situation here. It is clear that all parties below figured on the taxpaying voters in 9696 being the standard. The case of Jones v. School Dist. No. 96, 144 Okla. 10, 289 P. 268, a Commissioner's decision, is quoted from, which was a bond case, and there is very little in it that could naturally apply to the present case. However, if it were considered in this case that the voter mentioned in the Constitution was a different class of voter from the class required to vote for this increase, it would not help the position of the school district in its fight against the excise board to compel an increase. If some taxpayer was seeking to restrain the excise board from acting upon the ground that the voters as contemplated by the Constitution had not voted on the 10-mill proposition, as distinguished from a suit to compel the declaring of 9696 unconstitutional, it might help the case. In this case the oft-reminder as to how delicate a matter it is for a court to annul the action of the executive and administrative officers of the government, and also of the Legislature, is again stressed.

As it appears to the writer, the court has gone a long way to help those who would profit by a violation of the laws enacted for the benefit of the taxpayer, who has nothing to pay with.

Section 9696, it appears to me, was clearly within the power of the Legislature to enact. The case, however, below was based on it. The result of this decision, as I see it, can be only disastrous. It probably will be used shortly for the purpose of destroying the excise boards that were by recent enactment made independent of county elected officers on a ground that no one has thought of before, though for a generation we have acted on a theory that the excise board composed of elected county officers was not only empowered expressly, but rightfully, to pass upon the items of each school district, and of each city and county and every municipality, and to examine into the estimates and cut them down, but without power to increase, except with the sanction of the voters. That is all done away with now, largely, as it seems to me, as a result of impulse, and a rejecting of decisions well considered when pronounced, all in violation of the general principles of law, and the theory of constitutional government, and the positive requirements of our own Constitution, which makes the Legislature a branch of government.

The Supreme Court may, because it has the last opportunity to make pronouncements, soon find itself, under this decision, sitting in the midst of isolated pre-eminence.

A more flagrant case, it seems to me, could not' be found than the present one.

By the act of 1931, the Legislature provided a limit upon the number of teachers that could be employed in the ordinary school. Those of us who have taught school and are fairly well educated in the school of experience know that teaching 40 pupils, in the day that the schools confined themselves to teaching language and "living" in a large measure in the common schools, was looked upon as a very light task for the teacher. However, under modern conditions, janitor work is not thought of, with reference to those who are attending school, and gradually the number of teachers has been increased until the Legislature in some measure has seen the danger, and adopted chapter 34 of art. 2, sec. 1, Session Laws of 1931. Section 10367 of the statutes is thereby amended so as to make provisions for teachers' contracts. In order to enable the county superintendent to have some voice in the matter, the Legislature saw fit to provide that no teacher should receive pay, whose contract was not approved by the superintendent, with a proviso making it unlawful for any district board to employ a person who was akin to any member of the board. It is further provided that the district boards should not have authority to enter into contracts until after the beginning of the fiscal year, and the contract then should not be binding until an estimate had been made and approved by the excise board. After the excise board began to work upon the estimate, according to the record here, and in accordance with the law creating it, we find the teachers, learning of the unwillingness of the excise board to approve the various estimates, appealing to the district court for the prerogative writ of mandamus to compel the excise board to approve the estimates submitted, notwithstanding this law that must be relied upon as a foundation for getting the means of the taxpayers. Most clearly, on its face, the law contemplates the exercise of discretion by the excise board in the matter of approving the estimate.

There is a further provision that the district should not be liable for any difference between the contract and the amount approved, and neither should any member of the board. There is another provision to the effect that if something should happen destroying the school building facilities, it would invalidate the contract. There was a positive prohibition therein as follows:

"Provided the board of any school district may not enter into a contract with more than one teacher in each district until there shall be a daily average attend-

ance of at least twenty-two (22) pupils, which daily average attendance shall be determined by the county superintendent of public instruction."

Most clearly, the Legislature intended by this to provide at least 21 pupils for each teacher. It is true that it does not say in express words that when they get 22 pupils they have to get 20 more before they can take on another teacher, but it is clearly within the spirit of the law that the Legislature intended that a school having 35 pupils should not have three teachers. It is further clear under this law that it was in contemplation of the Legislature that the excise board be permitted and required to exercise its judgment and discretion unhampered by court procedure.

When one comes to the law passed by the Legislature April 10, 1931, Session Laws 1931, ch. 66, art. 11, p. 265, it is apparent that in the line of general policy, in the interest of economy in government, the expense of which was making large inroads upon the revenues of the people, the excise board was made independent and different from what it had been theretofore. It is further evident that by section 3 of the act all the powers of the old excise board were vested in the independent excise board provided for under the act. By section 5 all laws and parts of laws in conflict were repealed. Most clearly, under this law, the excise board, against whom the lower court issued its mandamus, was vested with as large powers as the Legislature could give on the subject of approving estimates, and that, unless the Legislature limited that power expressly, no other would have a right to interfere with the board, especially at the instance of the persons who were complaining of the action of the board, in pitying the needs of the taxpayer, who is so hard pressed at this time. The expense account that was visited upon the people that were appealing for seed to make a crop on is startling.

The court in giving judgment should take into account the necessity of the people, that have the bills to pay now. We have reached a stage wherein most people are like the children of Israel; when day they wish it were night, and in the long night of despair they wish for the day. The tax gatherer has gathered until there is nothing more to gather. Those who have been riding apparently have not recognized the fatigue of the horse, who has either dropped or is to drop in the shafts.

Under these conditions, it seems to me that this court should not go out of its way to strike down the acts of the Legislature,

framed in the interest of getting rid of the depression and equalizing burdens. I cannot approve of either the reasoning or the result in this case. We should not be alert to destroy the safeguards that have been provided by a co-ordinate branch of government.

The taxpayers' condition is almost that of Hamlet: "To be or not to be, That is the question." By reference to some of the passages in the Old Testament, we probably can find a parallel. Chapter 1, verses 9, 10, and 11, of Haggai, probably as well describes the condition, considering the length of time between its utterance and the present as language can make it, as applied to the condition of the average person who is trying to produce something in Oklahoma. The taxpayer, having looked in all directions, is now asking the question, "Is there no balm in Gilead, no physician there?"

Under these conditions, it seems to me that the construction of our law at this time ought to be in the interest of humanity. So feeling and believing that the construction put by the court upon the legislative enactments, and upon our Constitution, is unwarranted, I respectfully urge the above matters in dissent.

Supplemental Opinion on Rehearing.

ANDREWS, J. The language used in the fifth paragraph of the syllabus applies only to that portion of section 9696, C. O. S. 1921, changing the constitutional qualifications of voters at school district elections.

RILEY, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., and HEFNER and KORNEGAY, JJ., dissent. CLARK, V. C. J., absent.